HUTCHISON NURSING HOME, INC., et al., Appellees,

v.

Kevin BURNS, Acting Commissioner of State of Iowa, Department of Social Services, and State of Iowa Department of Social Services, Appellants.

No. 2–57121.

Supreme Court of Iowa.

Dec. 17, 1975.

Richard C. Turner, Atty. Gen., and Lorna Lawhead Williams, Asst. Atty. Gen., for appellants.

F. Richard Lyford of Dickinson, Throckmorton, Parker, Mannheimer & Raife, Des Moines, for appellees.

Heard by MOORE, C. J., and LeGRAND, REES, REYNOLDSON and McCORMICK, JJ.

McCORMICK, Justice.

This appeal involves Iowa's medical assistance program for the needy, "Medicaid", established in chapter 249A, The Code. Plaintiff nursing homes brought a certiorari action in district court challenging a decision of defendant commissioner that the department of social services had a right to recapture portions of depreciation taken by the nursing homes when they participated in the Medicaid program. The trial court sustained the writ. We affirm.

The question here, as it was in the trial court, is a legal one. It is whether plaintiffs' participation in the Medicaid program

was subject to an unarticulated but implicit condition that if they terminated their participation in the program before exhaustion of the useful life of their depreciable assets they would be obligated to reimburse the State for accelerated depreciation. The State's claim for reimbursement equals the amount by which the depreciation plaintiffs actually took during the period of their participation exceeded the depreciation they would have taken during that period if they had used the straight-line method. The same question is involved in *Iowa Department of Social Services v. West Height Manor, Inc.*, 236 N.W.2d 307, filed separately this date.

The parties are agreed on the amounts of accelerated depreciation involved:

| | |
|---|---|
| Hutchison Nursing Home, Inc. | $6049 |
| New Haven Rest Home, Inc. | $3494 |
| Griffin Nursing Center | $8809 |

We will first outline the nature and terms of the Medicaid program to put the question in context. Then plaintiffs' participation in the program will be examined. With that background, the question will be answered.

The federal government made grants available to the states for state-administered medical assistance programs by legislation enacted in 1965, effective in 1967. 42 U.S.C. § 1396 et seq. This legislation is Title XIX of the Social Security Act. It requires implementing state legislation, contemplates appropriation of state funds, and provides a number of conditions which states must meet to be eligible for the grants involved. These conditions must be met in a "state plan" submitted to and approved by the Secretary of Health, Education, and Welfare. The federal medical assistance program differs from Medicare, established in Title XVIII of the Social Security Act, in that Medicare provides medical assistance to the aged and is entirely federally funded and administered. However, the Medicare and Medicaid programs have the purpose of providing the same kinds and quality of medical assistance to those eligible to receive it, and they have a number of administrative similarities because of that common purpose.

Iowa participates in Medicaid by reason of an enabling act which became effective July 1, 1967. Acts 62 G.A. ch. 223. Subsequently, Iowa submitted its state plan to the HEW secretary for approval. One of the federal requirements was that the state plan provide methods and procedures governing payment for Medicaid services to assure that payments were "not in excess of reasonable charges consistent with efficiency, economy, and quality of care;  *  *  *." 42 U.S.C. § 1396a(a)(30). In relevant part, the Iowa plan provided:

"Basis of payment for skilled nursing homes is 'reasonable cost' using the same standards and principles and methods of computing payments *currently applicable* to extended care facilities under Title XVIII [Medicare]." (Italics added).

The Iowa plan was approved on September 27, 1967. The Medicare "reasonable cost" formula which was then applicable remained the same until Medicare regulations were changed August 1, 1970. See 20 C.F.R. §§ 405.401–405.454, effective November 12, 1966. Thus, the Iowa plan adopted the Medicare formula as it existed in 1967 and continued to exist until August 1, 1970, as the formula for Iowa Medicaid payments.

This reimbursement principle was included in the Medical Assistance Handbook for Skilled Nursing Homes, prepared and promulgated by the defendant department of social services to plaintiffs and other nursing homes seeking certification to participate in the Medicaid program. This principle was later incorporated in departmental regulation 5.1(223) adopted March 11, 1970. 1971 I.D.R. 944.

Plaintiffs entered the Medicaid program in 1967. The parties agree the relationship between plaintiffs as participants in the Medicaid program and the State as its ad-

ministrator was a contractual one. Plaintiffs had to meet certain certification standards. Annual licensing was provided for. Plaintiffs had to promise to keep certain records which the State would subject to regular audit to determine reimbursement entitlement.

It is undisputed that at all material times plaintiffs were to provide skilled nursing home services to Medicaid patients in return for payment under the reasonable cost formula employed in the 1967 Medicare regulations.

The Medicaid program was administered by the State through an intermediary, Blue Cross and Blue Shield. The intermediary had the responsibility of computing the Medicaid payments due the nursing homes under the Medicare formula. The computation was made annually after an audit of the financial records of each nursing home. Before that audit, the nursing homes were given tentative payments based upon estimated reasonable charges. After the audit, adjustments were made through refund or additional payment to bring the amounts paid into balance with the amount due under the Medicare formula.

Plaintiff Hutchison Nursing Homes, Inc., terminated its participation in the Medicaid program February 1, 1971. New Haven Rest Home, Inc., terminated October 1, 1970, and Griffin Nursing Center terminated April 1, 1972.

The State, through its intermediary, had made final settlement based on audit of nursing home books for each of the years 1967, 1968, 1969, and 1970, with each of the plaintiffs. For each of those years the intermediary computed payments in accordance with the 1967 Medicare formula. That formula was contained in federal regulations, §§ 405.401–405.454, Subpart D of Part 405, Title 20, Code of Federal Regulations, effective with publication in the Federal Register on November 22, 1966. Under that formula, reimbursement for care was based upon reasonable costs as defined in the regulations, including a fixed rate of return on the equity capital of profit-making proprietary facilities. The regulations expressly provided that in computing allowable costs, "In general, the options for accelerated depreciation allowed by the income tax laws will be permitted." § 405.-402(d). In addition, the regulations contained this relevant language:

"§ 405.415 Depreciation: allowance for depreciation based on asset costs.

(a) *Principle.* An appropriate allowance for depreciation on buildings and equipment is an allowable cost. The depreciation must be:

(1) Identifiable and recorded in the provider's accounting records;

(2) Based on the historical cost of the asset or fair market value at the time of donation in the case of donated assets, and;

(3) Prorated over the estimated useful life of the asset using:

(i) The straight-line method; or

(ii) Accelerated depreciation, under a declining balance method (not to exceed double the straight-line rate) or the sum-of-the-years' digits method * * *.

(b) * * *

(4) *Declining balance method.* Under the declining balance method, the annual depreciation allowance is computed by multiplying the undepreciated cost of the asset each year by a uniform rate up to double the straight-line rate."

Plaintiffs used the declining balance method of depreciation as permitted by the regulations. The intermediary approved the depreciation amounts claimed for each year as an allowable cost in computing annual Medicaid payments as required by the regulations. The final payments for the years 1967, 1968, 1969, and 1970 were made on that basis.

No provisions appeared in the Medicare regulations effective when Iowa's state

Medicaid plan was approved, its handbook promulgated, or its departmental regulation 5.1 adopted, which purported to authorize retroactive recapture of amounts attributable to accelerated depreciation if a nursing home would withdraw from the Medicare program before exhaustion of the useful life of depreciable assets. The present controversy arose precisely because the State attempted to offset such recaptured depreciation against amounts separately due plaintiffs after their termination of participation in the Medicaid program.

The State contends the right to recapture accelerated depreciation inheres in the reasonable cost concept. This contention ignores the import of the fact the applicable regulations defining reasonable cost did not mention any such right. If it had been the intent of the HEW secretary to qualify a facility's right to use accelerated depreciation as an allowable cost for reimbursement purposes, such intention could easily have been expressed in the regulations.

The secretary subsequently demonstrated how the subject could have been regulated. Effective August 1, 1970, the Medicare regulations were amended. The use of accelerated depreciation was restricted. This language was added to 20 C.F.R. § 405.-415(d)(3):

"When a provider who has used an accelerated method of depreciation with respect to any of its assets terminates participation in the program, or where the health insurance proportion of its allowable costs decreases so that cumulatively substantially more depreciation was paid than would have been paid using the straight-line method of depreciation, the excess of reimbursable cost, determined by using accelerated depreciation methods and paid under the program over the reimbursable cost which would have been determined and paid under the program by using the straight-line method of depreciation will be recovered as an offset to current reimbursement due or, if the provider has terminated participation in the program, as an overpayment.

In this determination of excess payment, recognition will be given to the effects the adjustment to straight-line depreciation would have on the return on equity capital and on the allowance in lieu of specific recognition of other costs in the respective years."

■ The State argues that this amendment was a mere "clarification" of the prior meaning of reasonable cost. We disagree. We recognize that an amendment to a statute or regulation may indicate either an intent to change the existing law or merely to clarify it, depending upon the circumstances. *Hansen v. Iowa Employment Security Commission*, 239 Iowa 1139, 1141–1142, 34 N.W.2d 203, 205 (1948). We have no basis in the circumstances here to find the 1970 amendment was a mere administrative interpretation of the original regulations. The amendment's limitation on the right to use accelerated depreciation as an allowable cost is inconsistent with the express definition of accelerated depreciation as an allowable cost without limitation in the original regulations. We are compelled to the conclusion the amendment was a substantive change in the rules governing computation of reasonable costs under the Medicare formula. This conclusion is buttressed by the fact that other parts of the amendment changed the circumstances under which accelerated depreciation could be taken. We are unable and unwilling to alter the plain meaning of the original regulations under the guise of interpretation.

■ The State characterizes the result as a windfall to those facilities which terminated participation in the program before exhaustion of the useful life of their depreciable assets. There are at least two answers to this characterization. One is the fact it is based upon an assumption that the assets did not actually depreciate at the accelerated rate. The record does not support this assumption. Considerable evidence was offered to the contrary. The other answer is that the regulations may

not be changed by interpretation simply because they result in a benefit to plaintiffs which the State considers undesirable. The State must abide by the terms of its contracts. *Kersten Company Inc. v. Department of Social Services*, 207 N.W.2d 117 (Iowa 1973).

At least one federal district court has recognized the 1970 amendment changed and did not simply clarify the meaning of the 1967 regulations. See *South Windsor Convalescent Home, Inc. v. Weinberger*, 403 F.Supp. 515 (1975). In that case the court also held it was a denial of due process for the federal government to apply the amendment retroactively in the Medicare program to recapture accelerated depreciation taken under the original regulations.

■ We interpret the Medicare formula as it existed before August 1, 1970, to include accelerated depreciation as an allowable cost not subject to government recapture upon nursing home termination of participation in the Medicare program. As a result, the Iowa Medicaid payment formula also included accelerated depreciation as an allowable cost not subject to government recapture upon nursing home termination of participation in the Medicaid program. This is the formula which was in effect at all material times in this case.

Whatever the rights of the federal government in the Medicare program to recapture accelerated depreciation through retroactive application of the August 1, 1970, change in the Medicare formula, no corresponding rights accrued to the State of Iowa in the Medicaid program. The August 1, 1970, change was not part of the State's bargain with these plaintiffs, nor was it part of the state law and state plan under which that bargain was made and performed.

The trial court was right in holding the State was not entitled to recapture the claimed amounts of accelerated depreciation from plaintiffs. The writ of certiorari was properly sustained.

Affirmed.