IOWA DEPARTMENT OF SOCIAL SERVICES, State of Iowa, Appellant,

v.

WEST HEIGHT MANOR, INC., Appellee.

No. 2–56943.

Supreme Court of Iowa.

Dec. 17, 1975.

Richard C. Turner, Atty. Gen., and Lorna Lawhead Williams, Asst. Atty. Gen., for appellant.

James P. Monen, Omaha, Neb., and Joseph F. McGinn, Council Bluffs, for appellee.

Heard by MOORE, C. J., and LeGRAND, REES, REYNOLDSON and McCORMICK, JJ.

McCORMICK, Justice.

This appeal requires us to determine the standard of payment for skilled nursing home services in the Iowa Medicaid program prior to July 1, 1970. We were confronted with a related problem in *Hutchison Nursing Home, Inc. v. Burns, Iowa*, 236 N.W.2d 312, filed separately this date. The determinative question in this case is whether the applicable payment rate for skilled nursing home services in the Iowa Medicaid program prior to July 1, 1970, was the customary charge of the nursing home or the Medicare reasonable cost formula adopted by Iowa in its Medicaid plan. The trial court held the basis for payment was the customary charge of the nursing home. We reverse and remand.

We described the Medicaid program in the *Hutchison* case, and that description will not be repeated here.

In March 1968, defendant became eligible to participate in the Medicaid program because of its certification as an extended care facility in the Medicare program. The state department of social services furnished defendant with documents explaining that nursing home services in the Medicaid program would be compensated under the Medicare reasonable cost formula. In addition, the department notified defendant by letter that the State would "apply the same standards and principles and use the same methods of computing payments currently applicable under Title XVIII (Medi-

care)." The department also informed defendant that, "The intent of the interim payment is to approximate your initial cost and minimize the amount of retroactive adjustment at the end of your reporting period." Ostensibly pursuant to the State's offer, defendant entered the Medicaid program by furnishing skilled nursing home services to Medicaid patients and complying with the State's record-keeping requirements.

Defendant participated in the Medicaid program in 1968, 1969, and 1970 but provided no Medicaid services after July 1, 1970. Interim payments for the services rendered were made in accordance with Medicare regulations and the state plan. At defendant's request the interim rate was fixed at $15 per patient per day. Over the period of defendant's participation, interim payments and credits of about $354,000 were made.

Based upon audit of defendant's cost records, the State claims defendant was overpaid a total of $59,158. That is the amount by which the annual computations based upon application of the Medicare reasonable cost formula were alleged to have been exceeded by the interim payments for the entire period involved.

When defendant rejected the State's claim, the State brought this action to collect the alleged overpayment, with interest. The State sued on a contract theory, alleging in effect that defendant breached its obligation to permit adjustment of payments, after audit, to conform them to the amounts determined under the Medicare reasonable cost formula.

In resisting the State's claim, defendant did not allege the department of social services ever promised to pay more than amounts fixed by the Medicare reasonable cost formula. Instead, defendants asserted the alleged contractual payment rate violated applicable state law, relying upon § 249A.4(9), The Code.

In relevant part that section provides: "Payment for other medical assistance under this chapter shall be the usual and customary fees, charges and rates, *provided, however, that if such payments are otherwise limited by federal law, such payment shall be as near the usual and customary fees, charges or rates as may be permitted by federal law.*" (Italics added).

Defendant maintains federal law did not limit payments to less than its "usual and customary fees, charges and rates" during the period involved. It offered evidence that its customary charges exceeded the interim payment rate. Although there was contrary evidence, the trial court found this fact in defendant's favor. Since the court also decided the law in accordance with defendant's contention, the court found no overpayment had occurred and entered judgment for defendant.

In this context, the State's appeal requires us to interpret Code § 249A.4(9) in light of relevant federal law in order to determine what payment rate it mandates and whether federal law imposed any limitation on such rate at the times involved in this case.

The first determination is obvious from the plain language of the statute. It requires payment for skilled nursing home services in the Medicaid program based upon "the usual and customary fees, charges and rates" unless limited by federal law. If they are limited by federal law, the payments are to be "as near the usual and customary fees, charges or rates as may be permitted by federal law."

We are unable to agree with the contention of the defendant and the holding of the trial court that federal law imposed no limitation upon payment fixed at nursing home usual and customary charges.

■ The federal legislation establishes the Medicaid grant program expressly required state plans to

" * * * provide such methods and procedures relating to the utilization of, and the payment for, care and services availa-

ble under the plan \* \* \* as may be necessary to safeguard against unnecessary utilization of such care and services and to *assure that payments (including payments for any drugs provided under the plan) are not in excess of reasonable charges consistent with efficiency, economy, and quality of care.*" (Italics added). 42 U.S.C. § 1396a(a)(30).

We read this provision as a federal limitation on customary nursing home charges. We do not agree with defendant's assertion in its brief that this limitation is inherent in the Iowa statute. By reason of the limitation in the federal statute, nursing homes in the Medicaid program could not make their customary charges for Medicaid patients if they exceeded "reasonable charges consistent with efficiency, economy, and quality of care."

In developing its state plan Iowa decided the Medicare reasonable cost formula established a basis for determining reasonable charges for Medicaid services. Therefore, the State adopted that formula in its state plan, promulgated it in its Medical Assistance Handbook for Skilled Nursing Homes, and incorporated it in departmental regulation 5.1(223), 1971 I.D.R. 944. Defendant contends the state plan provision, handbook reference, and regulation are all inconsistent with the mandate of § 249A.4(9), The Code, and thus invalid.

The first fallacy in this contention is defendant's assumption that § 249A.4(9) deems customary charges to be reasonable charges as the term "reasonable charges" is employed in the federal statute. The statute does not limit the "usual and customary fees, charges and rates," as the basis for payment to reasonable charges. Federal law imposes this limitation. Charges are not automatically reasonable just because they are customary.

The second fallacy in this contention is defendant's assumption that the Medicare reasonable cost formula as adopted by Iowa in 1967 as its standard for Medicaid payments does not provide a basis for as-

certaining reasonable charges. The formula is designed to arrive at a reasonable rate of compensation. The provider of services is first reimbursed for all of its costs attributable to its Medicaid patients. Actual, current costs are used. 20 C.F.R. § 405.-402(a). This is the reason settlements are delayed until after audit. Even then, a fixed percentage is added to recognized costs to be sure all costs are covered. 20 C.F.R. § 405.402(e) (1966). Profitmaking facilities are assured what Congress deems to be a fair rate of return on their equity capital as profit. The profit rate is "one and one-half times the average long-term rate of interest on obligations issued for purchase by the Federal Hospital Insurance Trust Fund." 20 C.F.R. § 405.402(f); cf. 42 U.S.C. § 1395x(v)(1)(A), (B).

In developing its state plan, Iowa was guided by the HEW department's Handbook of Public Assistance Administration, Supplement D, Medical Assistance Programs. That publication reflected departmental interpretation of the reasonable charges limitation of 42 U.S.C. § 1396a(a)(30). It provided in relevant part:

"For institutions, other than hospitals, the fee structure will focus on payment on a reasonable cost basis determined according to commonly used accounting methods on a per diem or relationship of costs to charges basis. For comparable facilities, payment equivalent to reasonable costs under part A of title XVIII is recommended." Handbook of Public Assistance Administration, Supplement D, *supra*, § D–5340.

Defendant accurately points out that the Medicare reasonable cost formula was not federally established by regulation as a method for computing the upper limit of Medicaid payments until July 1, 1970. See 45 C.F.R. § 250.30(b)(3)(ii). We agree. However, it is one thing to say it was not the measure of maximum payments until then and quite another to say it was not an appropriate means of computing reasonable charges before then.

In 1967, the State was legitimately interested in adopting a Medicaid payment standard which would conform with the federal statutory reasonable charges limitation. The Medicare formula provided such a standard, and HEW recommended it. This standard provided the State with an appropriate means of enforcing the federal limitation on customary nursing home charges.

The effect of the secretary of HEW's July 1, 1970, adoption of 45 C.F.R. § 250.-30(b)(3)(ii) was to limit Medicaid payments to the reasonable cost standard of Medicare. This means the problem in the present case should not recur. It also buttresses our holding that the state department of social services appropriately adopted the Medicare reasonable cost formula earlier as a proper basis for computing reasonable charges within the meaning of that federal statutory limitation upon the payment of customary nursing home charges. In adopting regulation 45 C.F.R. § 250.30(b)(3)(ii), the HEW secretary necessarily made a similar determination that the Medicare reasonable cost formula established reasonable charges within the meaning of 42 U.S.C. § 1396a(a)(30). His authority to do so was challenged by several nursing homes in *Johnson's Professional Nursing Home v. Weinberger*, 490 F.2d 841 (5 Cir. 1974). In deciding the issue, the court said:

"Opelika cannot and does not assert that establishment of payment limits is outside the Secretary's authority, rather the nursing homes contend that by limiting the Medicaid nursing home payments to 'reasonable costs' (the Medicare standard) when the Medicaid statute limits the payments to 'reasonable charges consistent with efficiency, economy and quality of care' the Secretary acted inconsistently with his statutory command. We recognize, that 'reasonable costs' and 'reasonable charges' may have distinct and different connotations in common understanding, but the issue here, as recognized by the district court, is whether reasonable costs as defined in the complex formulae of Title XVIII (Medicare)

is consistent with the Medicaid statutory requirement of reasonable charges consistent with efficiency, economy, and quality of care.

"Nothing in the statutory scheme or in the statutory history indicates that Congress meant to preclude the reasonable cost standard as a measure of reasonable charges consistent with efficiency, economy, and quality of care. The statutory limit, reasonable charges, etc., applies to all state Medicaid payments. But in 42 U.S.C.A. § 1396a(a)(13)(D), Congress specified that inpatient hospitals should receive reasonable costs under Medicaid. Thus Congress itself seemingly used 'reasonable costs' as a standard consistent with the general statutory limit.

"\* \* \*

"Congress had formulated a comprehensive formula for reimbursing nursing homes under Medicare, under which nursing homes furnish the same services as under Medicaid. It was not inconsistent with the Medicaid standard for the Secretary to promulgate a regulation which adopted the standard Congress had promulgated to achieve the same purposes." 490 F.2d 841 at 844–845.

We reach a similar conclusion for similar reasons in upholding the 1967 adoption by the Iowa department of social services of the Medicare reasonable cost formula as the basis for Medicaid reasonable charge payments. Congress and the HEW secretary at that time treated the reasonable cost formula as a proper basis for determining reasonable charges. It was not the only way, but it was an appropriate way. It was mandated in Medicare, and it was permissible in Medicaid.

Adoption of the Medicare standard did not violate Iowa law. In § 249A.4(9), The Code, the legislature incorporated the federal reasonable charges limitation on the payment of customary charges. In adopting the Medicare standard in its state plan and regulations, the department of social

services did no more than give effect to that federal limitation.

Defendant's reliance upon *Seneca Nursing Home v. Kansas State Bd. of Social Welf.*, 490 F.2d 1324 (10 Cir. 1974), is misplaced. The question in *Seneca* was whether a regulation of the Kansas department of social welfare providing an allowable cost plus fixed fee formula for Medicaid payments violated a Kansas statute requiring Medicaid payments to be "reasonable, usual and customary charges." The Kansas regulation and statute were materially different from those involved here. The Kansas regulation did not incorporate the Medicare reasonable cost formula, and it permitted budget limitations to affect the fixed fee which could be paid. The Kansas statute limited payments to reasonable charges, not merely usual and customary charges. The *Seneca* court was confronted only with an issue of conflict between the Kansas regulation and the Kansas statute. The consistency between the Medicare reasonable cost formula and the federal reasonable charges standard was not involved in that case.

We find no conflict between Code § 249A.4(9) and use by the Iowa department of social services of the Medicare reasonable cost formula as the basis for fixing reasonable charges to pay nursing homes for Medicaid services.

Defendant is thus entitled to no more than its contract with the State calls for, adjustment of the amounts received as interim payments to the amount established under the Medicare reasonable cost formula. The record shows the State claimed $59,158 in Medicaid overpayments, with interest.

Of the principal amount, $18,095 is attempted recapture of depreciation. This is the amount by which the depreciation taken by defendant in the Medicaid program exceeded the amount it would have taken had the straight-line method been used. The State seeks to recapture this amount because defendant terminated participation in Medicaid before exhaustion of the useful life of its depreciable assets. In *Hutchison Nursing Home, Inc. v. Burns, supra*, we held the Medicare reasonable cost formula as it existed prior to August 1, 1970, did not authorize the State to recapture accelerated depreciation in these circumstances. Therefore, for the reasons given in that opinion, the State is not entitled to the portion of its claim attributable to accelerated depreciation. Accordingly, the total overpayment for the period involved, based upon application of the Medicare formula without depreciation recapture, is $41,063.

Upon remand, the trial court shall enter judgment for the principal amount of $41,063 and interest at the legal rate of seven percent from the date of procedendo from this court.

Reversed and remanded.