**DUNLAP CARE CENTER, Appellant,**

v.

**IOWA DEPARTMENT OF SOCIAL SERVICES, Appellee.**

No. 83–957.

Supreme Court of Iowa.

July 18, 1984.

Robert F. Holz, Jr., and Deborah Tharnish Craig of Davis, Hockenberg, Wine, Brown & Koehn, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., and Gordon E. Allen, Sp. Asst. Atty. Gen., for appellee.

Considered by McCORMICK, P.J., and McGIVERIN, LARSON, SCHULTZ and WOLLE, JJ.

WOLLE, Justice.

Dunlap Care Center (Dunlap) appeals from the district court's affirmance on judicial review of an agency decision of the Iowa Department of Social Services [department], now the Iowa Department of Human Services. The department's commissioner had contended, and the agency and district court held, that Dunlap owed the department $11,171.38, the amount relatives of three medicaid patients had paid

Dunlap so the patients could reside in private rather than semi-private rooms. We affirm.

Dunlap is an Iowa-licensed intermediate care facility which provides around-the-clock nursing services to its resident patients, primarily elderly persons. Dunlap houses both private patients who pay Dunlap from their own funds and medicaid patients who qualify for medical assistance which the department pays directly to Dunlap. This case involves the interpretation of federal law, Iowa statutes and the department's regulations which control the amount Dunlap can receive for providing its services to medicaid patients.

The particular service for which payment to Dunlap is here in question is the furnishing of a private room rather than a multibed room to medicaid patients. The Dunlap facility has both multi-bed rooms and private rooms. Dunlap charges private patients considerably more for private rooms than for multi-bed rooms, but the department does not pay any differential when medicaid patients are placed in private rooms. Consequently Dunlap ordinarily places its patients in multi-bed rooms when a private room is not a medical necessity.

The controversy in this case arose when three of Dunlap's elderly medicaid patients requested placement in private rooms not as a medical necessity but simply for the greater comfort such privacy would provide. Because the patients' relatives were willing to pay the differential between private and multi-bed rooms, Dunlap granted their requests and received from the relatives a total of $11,171.38 as a supplement to the department's medicaid payments. When an audit disclosed these payments, Dunlap was advised that the department's regulations proscribed such supplementation, and Dunlap was directed to pay that amount to the State as a credit against what the State had paid Dunlap for care of the three medicaid patients. Dunlap refused to pay, contending (1) that the regulations could not reasonably be interpreted to proscribe the relatives' payments for a private room, and (2) that the commissioner's

action exceeded his authority provided in Iowa Code section 249A.4 and directly conflicted with Iowa Code section 249A.9 (1981).

The district court addressed and rejected each of Dunlap's contentions, concluding that the department had properly promulgated and interpreted its own rules and had correctly interpreted the statutes upon which Dunlap relied. The court expressly gave considerable deference to the department's interpretation of the statutes from which it derived its rule-making authority. Consequently, before describing further the Iowa medicaid plan and addressing each of the reasons Dunlap urges for overturning the agency's decision, we first will set forth the appropriate standards governing this judicial review proceeding.

I. *Scope of Review.*

■ The Iowa Administrative Procedure Act, found in Iowa Code chapter 17A (1983), governed Dunlap's petition for judicial review and controls our review in this appeal. We are to apply to the agency action the standards of Iowa Code section 17A.19(8) to determine whether the district court correctly applied the law. *Jackson County Public Hospital v. PERB*, 280 N.W.2d 426, 429–30 (Iowa 1979). Because the facts before the agency and now before us are essentially undisputed, we here must focus on four subsections of section 17A.19(8) and thereby determine from the entire record whether the department's action was:

> *a.* In violation of constitutional or statutory provisions;
>
> *b.* In excess of the statutory authority of the agency;
>
> *c.* In violation of an agency rule;
>
> . . . .
>
> *g.* Unreasonable, arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.

*Hiserote Homes, Inc. v. Riedemann*, 277 N.W.2d 911, 912 (Iowa 1979).

■ Moreover, to the extent that Dunlap is challenging the department's statutory

authority to promulgate its rules, we apply a "rational agency" standard; Dunlap is required to show by clear and convincing evidence that the department's rule making was beyond its statutory authority. *Id.* at 913; *Davenport Community School District v. Iowa Civil Rights Commission,* 277 N.W.2d 907, 909–10 (Iowa 1979). This standard reflects the respect reviewing courts are to pay to the administrative tribunal. It provides the agency a reasonable range of informed discretion. *City of Davenport v. Public Employment Relations Board,* 264 N.W.2d 307, 312–13 (Iowa 1978).

█ We note that the district court articulated in its decision and appears to have followed these standards for review of the department's decision. We therefore reject Dunlap's suggestion that the district court misconstrued and misapplied the rational agency rule.

II. *Background—Federal and Iowa Treatment of Supplementation.*

The genesis of Iowa's medicaid program was federal legislation enacted in 1965, effective in 1967, which made grants available to the states for state-administered medical assistance programs. 42 U.S.C. §§ 1396 *et seq.* This legislation, Title XIX of the Social Security Act, provided that federal grant money could not be used by a state unless and until it had first enacted implementing legislation, appropriated matching state funds, and adopted an individual state plan which met with the approval of the Secretary of Health, Education and Welfare (HEW). Iowa's medicaid plan was approved on September 27, 1967, following enactment of the Medical Assistance Act, now Iowa Code chapter 249A. 1967 Iowa Acts ch. 223. *See generally Hutchison Nursing Home, Inc. v. Burns,* 236 N.W.2d 312, 314 (Iowa 1975).

In brief summary, medicaid is only paid to intermediate care facilities like Dunlap when both the facility and an individual patient have qualified under federal and state guidelines. To qualify as a participant in the Iowa program Dunlap was re-

quired to sign an agreement accepting the department's fee structure as full compensation for services provided to qualified residents under the program. Once qualified as a participating facility, Dunlap receives payment which is based on a determination of the average per diem cost of care per patient. Allowable costs which are provided for in the calculation of the per diem cost include the cost of providing care both to medicaid patients and private patients. Costs are not allocated to a specific type of patient or specific type of room; the costs of all patients and all rooms are considered in arriving at the allowable per diem rate.

The amount the state pays to the facility for each patient is also dependent on the amount of each patient's available resources. For a patient to qualify for medical assistance under the Iowa medicaid program, the patient is first required to expend for care in the nursing home all of the patient's available funds (except for $25 a month). The State then pays to the facility only the difference between the amount paid by a medicaid patient and the "reasonable costs" of the care determined on a per diem basis by the formula provided in medicaid guidelines.

Federal restrictions on supplementation of medicaid payments have been tightened since federal-state medicaid programs first became operational in 1967. The evolution of these restrictions is accurately described in *Resident v. Noot,* 305 N.W.2d 311, 313 (Minn.1981):

When the Medicaid program was first established, many states were unable to bear the entire cost of providing medical care to the needy, notwithstanding the states' receipt of federal funds. The charges imposed by the nursing homes were, therefore, met by a combination of government funds and forced payments from an M.A. recipient, here relatives or friends, called supplementation. Prior to 1971, the Secretary of Health, Education, and Welfare approved state medicaid plans including supplementation, so long as a state could show that it had existing

supplemental arrangements with nursing homes and that in the absence of such arrangements it would be unable to attract a sufficient number of nursing homes into the program.

In 1969, the Secretary promulgated a regulation giving those states that included supplementation in their Medicaid plans a limited amount of time to phase out the supplementation portion of their plans. 45 C.F.R. § 250.30(a)(6) (1972). The regulation was a response to the Congressional concern with supplementation.

> There are wide variations among the States in the manner of financing the cost of nursing home care provided to the needy. In some States, the full cost of care is paid. In others, a negotiated rate is developed which may or may not approximate the reasonable cost or reasonable charges for the services provided. Some States, however, depend upon the supplementation of the State agency's below-cost allowances for care with contributions from relatives or the needy individual himself. As a matter of public policy, it would be best for all concerned: the needy individual, his relatives, the State agency, and the nursing home if the reimbursement made by the State represented the reasonable cost or reasonable charges for comparable services. Until such time as proper and adequate payments are made, a problem exists for those States which have been using the supplementation system as a means of providing the additional funds necessary as a result of the State's payment of less than the full costs of nursing home care. The committee has considered this matter carefully and has determined not to include any legislation dealing with this situation upon the assurance of the Department of Health, Education, and Welfare that existing supplementation programs will be permitted to continue until January 1, 1971, where a State determines and advises the Secretary that its payments for nursing

home care are less than the reasonable cost of the care and services provided. Such States are expected to provide the Secretary, prior to 1971, with a plan for phasing out such supplementation during a reasonable period of time subsequent to January 1, 1971.

S.Rep. No. 744, 90th Cong., 1st Sess. 187–188, *reprinted in* [1967] U.S.Code Cong. & Ad.News 2834, 3026.

The current supplementation regulation provides that "[a] State plan must provide that the Medicaid agency must limit participation in the Medicaid program to providers who accept as payment in full, the amounts paid by the agency." 42 C.F.R. § 447.15 (1980).

The district court found that the Iowa administrative rules promulgated by the department comport with current federal guidelines for restricting supplementation of state medicaid payments. One of the department's rules provides:

> *Reasonable charges.* Participation in the medical assistance program shall be limited to providers of service who accept, as payment in full, the amounts paid in accordance with the fee structure established for intermediate care facilities.

498 Iowa Admin.Code § 81.13(22) (formerly 770 Iowa Admin.Code § 81.13(22)). Another rule provides:

> *Supplementation.* Only the amount of client participation may be billed to the resident for the cost of care. No supplementation of the state payment shall be made by any person.

> Exception: The resident, the resident's family, or friends may pay to hold the resident's bed in cases where a resident spends over eighteen days on yearly visitation (or longer with approval under 81.-104(4)"(d)") or spends over ten days on a hospital stay. When the resident is not discharged from the facility, such payments shall not exceed 75% of the allowable audited costs for the facility, not to exceed the maximum reimbursement rate. When the resident is discharged, the facility may handle the holding of the

reserve bed in the same manner as a private paying resident.

Exception: Payments made by the resident's family toward cost of care of the resident shall not be considered as supplementation so long as such payments are included in client participation and are not over and above the payment made by the state for care of the resident.

498 Iowa Admin.Code § 81.10(5) (formerly 770 Iowa Admin.Code § 81.10(5)).

 These Iowa rules provide a few exceptions to the general policy disallowing supplementation, but no exception allows the patient or the patient's relatives to pay a facility for furnishing a private room rather than a multi-bed room. We find, as did the district court, that the department's rules implement the quoted federal regulation and proscribe supplemental payments for services covered by the department's medicaid program. The next question is whether the furnishing of a private room to a medicaid patient is a covered service.

### III. *Is a Private Room a Covered Service?*

Dunlap contends that the furnishing of a private room to a medicaid patient is not a covered service and therefore not subject to the restrictions on supplementation. Dunlap cites for its position language from two federal sources as well as a recent decision of the Minnesota Supreme Court. The federal authority is contained in a 1977 memorandum from HEW's acting director which, quoting in part from a 1967 Senate report, states:

Q. Can a relative pay an additional amount to have a title XIX recipient placed in a private room? A. Yes. The following language is excerpted from the Report of the Senate Finance Committee dated Nov. 14, 1967. "Any limitations in supplementation are not intended to preclude additional payments for the reasonable costs or charges for non-standard nursing home services such as private room, telephone, television, et cetera, nor would they in any way affect the pay-

ment toward the reasonable costs of care by a patient who has income in excess of the amount the State determines is needed for his personal expenses other than nursing home care." [Senate Rep. No. 744, 90th Cong., 1st Sess. 187–88, *reprinted in* [1967] U.S.Code Cong. & Ad. News 2834, 3026.] Based upon this Senate Finance Committee report, our interpretation is that States cannot prohibit a payment by a relative or other party to obtain a private room.

Although this quoted language suggests that the furnishing of a private room is not a covered service, other more recent federal sources relied on by the department have emphasized differences in state medicaid programs and have explained that whether a private room is a covered service depends on the particular state's medicaid plan.

In an October 13, 1978 letter to the Illinois Director of the Illinois Department of Public Aid, the regional medicaid director of HEW's region 5 stated:

Supplementation for private room patients must be permitted when the State plan specifically limits Medicaid payment to semi-private, ward, or some similar discretely definable accommodation in a nursing home. Where the State plan does not so limit the Medicaid payment, supplementation for private room accommodations is not permissible.

Moreover, on November 7, 1979, HEW's Director of Alternative Reimbursement Systems gave the following explanation in a letter to the HEW Region IV administrator:

Supplementation is defined as payments by patients or relatives for services not included in a State's definition of purchased services. Thus, whether supplementation for a private room is permissible depends on a particular State's coverage provisions for the accommodation aspect of routine care in the provider agreement.

States may specify that as a condition of participation, nursing homes must provide, as part of routine care, a minimum square footage per bed. A nursing home

may provide more space per bed or may provide a private room. Under such specifications, a private room would be considered within the accommodations covered by the State's payment, and supplementation for a private room may be prohibited.

Alternatively, States may specify that nursing homes must provide, as part of routine care, a semi-private room. Under such specifications, a private room would not be considered within the accommodations covered by the State's payment, and supplementation for a private room may not be prohibited.

Any supplementation which is allowed and charged should be reasonably related to the extra cost of the private room provided. Unreasonable or excessive supplemental charges or unusual forms of compensation would raise the possibility of a violation of section 1909(d) of the Social Security Act.

There is no specific statute underlying the regulatory provision at 42 CFR 447.15 which limits participation in the medicaid program to providers who accept, as payment in full, the amount paid by the agency. However, the provision is based upon the general authority of the Secretary under section 1902(a)(4) of the Act to require state plan provisions which are necessary for the proper and efficient operation of the plan.

In other recent letters which are part of the record, HEW officials have concurred in and given further support for this analysis. These recent authoritative statements of federal policy persuasively support the commissioner's action in disallowing supplemental payments for private rooms furnished for medicaid patients. According to these authorities the determination of whether furnishing of a private room is a covered service turns on whether the individual state plan limits medicaid payments to definable non-private accommodations. Iowa's plan does not so limit the type of accommodations furnished. In Iowa the cost of providing both private and multibed rooms is included in the amount which Dunlap and other intermediate care facili-ties receive for housing medicaid patients. We conclude that the commissioner's action disallowing supplementation for a private room was consistent not only with these recent statements of federal policy but also with the evolving policy of HEW to phase out its earlier permissive approach to the issue of supplementation.

Dunlap also relies on *Resident v. Noot*, 305 N.W.2d 311 (Minn.1981), in which the Minnesota Supreme Court found that payment for a private room by a patient's relative was not proscribed as supplementation. The Minnesota medicaid plan, however, was significantly different from Iowa's plan. The record shows that Minnesota did not include the extra cost of private rooms in its calculation of the basic per diem cost which was paid to facilities housing medicaid patients. Unlike the Iowa medicaid plan, the Minnesota plan increased by 15% the per diem amount paid to an intermediate care facility for each patient who was medically required to be placed in a private room. *See* Minnesota Dept.Pub.Welfare Rule 49(c). Because the Minnesota plan for reimbursement of intermediate care facilities differed from the Iowa scheme in that significant respect, the commissioner has properly distinguished the *Resident* case on its facts. Consequently, that case does not provide persuasive support for Dunlap's position.

■ We conclude that neither federal authorities nor the *Resident* case from Minnesota are inconsistent with the department's determination that the furnishing of a private room is a covered service which is subject to restrictions on supplementation under the Iowa medicaid plan.

IV. *Was the Commissioner's Action in Conflict With Iowa Statutes?*

Dunlap further contends that the commissioner's action cannot be squared with two provisions of Iowa's medical assistance statute, Iowa Code sections 249A.4 and 249A.9 (1981).

■ A. Section 249A.4 is the enabling provision which empowered and direct-

ed the commissioner to make rules and establish policies to implement the Iowa medicaid program in accordance with the standards and priorities established by federal and Iowa law. The commissioner was specifically empowered and directed to determine "the greatest amount, duration, and scope of assistance which may be provided, and the broadest range of eligible individuals to whom assistance may effectively be provided, under this chapter within the limitations of available funds." Iowa Code § 249A.4(1) (1981). The commissioner's action proscribing supplementation for private rooms would be in jeopardy, however, to the extent that it conflicted with federal law or state statutes. Rules which contravene statutory provisions or exceed an agency's statutory authority are invalid. *Sorg v. Iowa Department of Revenue*, 269 N.W.2d 129, 131 (Iowa 1978). In analyzing such questions, however, we apply the rational agency test; a rule is within the agency's authority if a rational agency could conclude that the rule is within the statutory mandate. *Iowa Auto Dealers v. Iowa Department of Revenue*, 301 N.W.2d 760, 762 (Iowa 1981); *Hiserote Homes, Inc. v. Riedemann*, 277 N.W.2d at 913.

 We have found in division III that the commissioner's action enforcing the department's rules governing supplemental payments for private rooms was in substantial conformance with federal guidelines because of the manner in which the department calculated reimbursed costs under the Iowa medicaid program. The commissioner therefore rationally determined that his action was not in conflict with federal law. Only one question remains: can Iowa Code section 249A.9 (1981), which specifically addressed supplementation, be squared with the commissioner's action.

B. Section 249A.9 provided:

Direct payment to health care facility—no deduction for service. If the state department is making direct assistance payments to persons providing a recipient with services in a health care facility licensed under chapter 135C in amounts less than the usual and reasonable charge for such service, the state department shall permit the recipient or someone on his behalf to pay the person rendering the service the difference between the amount of assistance and the reasonable value of such service, without deducting such additional payment from the direct assistance payment to be made by the state department.

(This section was repealed effective July 1, 1984.) *See* Iowa Acts ch. ——, § ——. Dunlap contends that the language of this statute explicitly permitted supplemental payments for the private rooms it furnished to medicaid patients because Dunlap's usual and reasonable charge to private patients for that service was greater than the amount it was reimbursed by the department. Dunlap also argues that neither the agency nor the district court found a way to reconcile the wording of the statute with the department's rules on supplementation.

 We find no inconsistency between section 249A.9 and the department's rules. The statute clearly applied only to medicaid patients, not to private patients. Consequently the statute permitted supplementation only when a medicaid patient received a service for which the department had paid the provider, here Dunlap, less than its usual and reasonable charge for furnishing that service. We have already determined that the furnishing of a private room, though optional with the provider, was a service covered by the formula for determining the amount the provider would be reimbursed. Consequently, Dunlap's usual and reasonable charge for providing any medicaid patient a room, whether private or multi-bed, could not exceed the amount the department had agreed to pay—the per diem rate calculated on the basis of Dunlap's cost for all rooms. Dunlap had by written contract with the department agreed to receive that amount for providing the covered service. The reasonable value of this covered private-room service is best measured by and is therefore the same as the contract rate which Dunlap had agreed to receive.

Moreover, we find that the commissioner's interpretation of the statute is reasonable. The commissioner interprets the statute to permit supplementation only when the total services provided by the facility to a patient include one or more specific services not covered and paid for by the department. Paragraphs 21 and 22 of the parties' stipulation of facts shed further light on this interpretation, for they describe specific services which are not covered and also services which are fully covered by medicaid payments.

21. If a relative purchased an electric wheelchair, a special bed, telephone service, or a television for a resident, its costs would not be deducted from the cost paid by the [department] to the facility.

22. If a relative pays additional money for food or nursing services provided by a facility under the Title XIX program, such payments are considered supplementation. The amount the facility receives from the State is reduced by the amount of such payments from the relative.

Each additional service identified in paragraph 21 would not have been covered by medicaid payments, so Dunlap could properly receive from the medicaid patient or the patient's relatives supplemental payments in amounts reflecting the usual and reasonable charges for each such non-covered service. Conversely, the basic services identified in paragraph 22 were covered services provided to medicaid patients for which Dunlap was reimbursed in full in accordance with the determination of total facility costs. We find that the commissioner properly determined that the furnishing of a room, whether multi-bed or private, was a covered service and therefore within the same category of services as those described in paragraph 22 of the stipulation rather than those described in paragraph 21. Dunlap's costs incurred in furnishing private room services to medicaid patients, like the costs of food or nursing services, were already accounted for in the formula used to determine the department's payment for those services.

Dunlap had the right to elect whether to place any individual medicaid patient in a private or multi-bed room, but it could not under either the department's regulations or Iowa Code section 249A.9 receive supplemental payments for the placement of medicaid patients in private rooms. Since the costs of all rooms had already been included in the amount Dunlap had agreed to be reimbursed for providing that basic service, the commissioner properly refused to permit Dunlap to retain the additional amounts paid for that basic service by the patients' relatives.

We hold that the commissioner's action proscribing supplemental payments for private rooms furnished to medicaid patients was not inconsistent with Iowa Code section 249A.9 (1981). Consequently, the district court properly upheld on judicial review the commissioner's action directing Dunlap to pay back to the department the supplemental amounts it had received from relatives of medicaid patients for furnishing private room services.

V. *Objection to Printed Appendix.*

The department has objected to Dunlap's inclusion in the printed appendix of portions of the record it contends were unnecessarily designated. Although the parties needlessly included in the appendix several briefs that the parties had filed with the agency and the district court, as well as copies of several legal authorities which need only have been cited, we find that the appendix has for the most part contained only "parts of the record to which the parties wish to direct the particular attention of the court." Iowa R.App.P. 15(a). Moreover, because our decision will require that Dunlap and not the department pay the costs of this appeal, this issue is now moot.

AFFIRMED.

All Justices concur except McGIVERIN, J., who dissents.