Jane RESIDENT, by her Guardian Ad Litem, Respondent,

v.

Arthur E. NOOT, individually and as Commissioner of the Department of Public Welfare, Appellant.

No. 51342.

Supreme Court of Minnesota.

May 1, 1981.

Warren Spannaus, Atty. Gen., Ellen Dubuque, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Laurie Davison, Legal Aid Society of Mpls, Inc., Minneapolis, for respondent.

AMDAHL, Justice.

Defendant, Arthur E. Noot, Commissioner of the Department of Public Welfare (D.P.W.), appeals from a judgment of the Hennepin County District Court declaring invalid a D.P.W. Medical Assistance Policy. We affirm.

The facts in this case are not in dispute. Plaintiff [1] is a ninety-six year old resident of a nursing home; she is currently assigned to a double room. Plaintiff is "medically needy" and therefore eligible to receive Medical Assistance (M.A.). Although plaintiff cannot live alone, she does not need the skilled nursing care that would require her to be assigned to a private room. Because plaintiff has no medical need for a private room, M.A. will not cover its cost.

Plaintiff's daughter is not financially responsible for her mother, and has no obligation under law to contribute to the cost of her mother's care. Minn.Stat. § 256B.14 (1980). Plaintiff's daughter, however, wants her mother to have a private room so that she "can live her last years in greater comfort and with more dignity". For that reason, she offered to pay the nursing home the difference between the daily charge for a private room ($40.00) and the M.A. reimbursement rate for a double room ($19.65). The nursing home refused the payments, informing her that a D.P.W. policy precludes an M.A. provider's request or receipt of any third party payments on behalf of M.A. recipients.

Plaintiff then filed a complaint in Hennepin County District Court asking for a judicial declaration that her daughter may supplement her M.A. benefits in order to pay for a private room and that the payments made by her family would not affect her status as an M.A. recipient. The trial court held that the nursing home could accept the payments from the daughter and that their receipt would not affect either the status of the nursing home as an M.A. provider or the status of the plaintiff as an M.A. recipient. The D.P.W. appeals to this court.

1. The name "Jane Resident" is a pseudonym.

The threshold issue to be decided is whether D.P.W. Rule 47(F)(1) prohibits supplemental payments for items and services not provided by Medical Assistance. 12 M.C.A.R. § 2.047(F)(1) (1978). The D.P.W. argues that it should be allowed to interpret its own rule, and that this court must defer to its reading of Rule 47 because it is the agency charged with the rule's execution. *See Red Lion Broadcasting v. F.C.C.*, 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969). We do not agree.

As a general rule, this court defers to an agency's interpretation when the language subject to construction is so technical in nature that only a specialized agency has the experience and expertise needed to understand it, *Reserve Mining Co. v. Herbst*, 256 N.W.2d 808 (Minn.1977), when the language is ambiguous or when the agency interpretation is one of long standing. *Estate of Abbott v. Dancer*, 213 Minn. 289, 6 N.W.2d 466 (1942). We do not defer when the language employed or the standards delineated are clear and capable of understanding.

D.P.W. Rule 47(F)(1) provides as follows:

1. Payments to eligible providers. Participation in the MA program is limited to those providers of medical care, service and supplies who accept as payment in full amounts paid in accordance with DPW's maximum allowable charges. Providers are prohibited from requesting or receiving additional payment from the recipient, his relatives or guardian, except to meet the spend-down provision of state law. Providers will be directly paid for providing medical care and services rendered within the scope of practice recognized under federal and state law and regulations.

12 M.C.A.R. § 2.047(F)(1) (1978). On our examination, we find the rule is expressed in clear and common terms; the language is not overly technical or ambiguous. In addition, the D.P.W. has made conclusory statements, but has not demonstrated its inter-

pretation to be one of long standing.[2] Therefore, we find no reason to defer to the agency construction of Rule 47(F)(1).

Our analysis of this rule requires consideration of the comprehensive federal and state schemes for the administration and regulation of medical care to the aged. The state scheme, the Minnesota Medical Assistance program, is a part of the federal scheme, the federal Medicaid program. Together they form a cooperative venture through which the federal government supplies funds to state programs run in accord with federal requirements. *White v. Beal,* 555 F.2d 1146, 1149 (3rd Cir. 1977). Rule 47(F)(1) represents this state's compliance with one of those requirements, a mandatory phase out of supplementation.

When the Medicaid program was first established, many states were unable to bear the entire cost of providing medical care to the needy, notwithstanding the states' receipt of federal funds. The charges imposed by the nursing homes were, therefore, met by a combination of government funds and forced payments from an M.A. recipient, her relatives or friends, called supplementation. Prior to 1971, the Secretary of Health, Education, and Welfare approved state Medicaid Plans including supplementation, so long as a state could show that it had existing supplemental arrangements with nursing homes and that in the absence of such arrangements it would be unable to attract a sufficient number of nursing homes into the program.

In 1969, the Secretary promulgated a regulation giving those states that included supplementation in their Medicaid plans a limited amount of time to phase out the supplementation portion of their plans. 45 C.F.R. § 250.30(a)(6) (1972). The regulation was a response to the Congressional concern with supplementation.

> There are wide variations among the States in the manner of financing the cost of nursing home care provided to the needy. In some States, the full cost of care is paid. In others, a negotiated rate

is developed which may or may not approximate the reasonable cost or reasonable charges for the services provided. Some States, however, depend upon the supplementation of the State agency's below-cost allowances for care with contributions from relatives or the needy individual himself. As a matter of public policy, it would be best for all concerned: the needy individual, his relatives, the State agency, and the nursing home if the reimbursement made by the State represented the reasonable cost or reasonable charges for comparable services. Until such time as proper and adequate payments are made, a problem exists for those States which have been using the supplementation system as a means of providing the additional funds necessary as a result of the State's payment of less than the full costs of nursing home care. The committee has considered this matter carefully and has determined not to include any legislation dealing with this situation upon the assurance of the Department of Health, Education, and Welfare that existing supplementation programs will be permitted to continue until January 1, 1971, where a State determines and advises the Secretary that its payments for nursing home care are less than the reasonable cost of the care and services provided. Such States are expected to provide the Secretary, prior to 1971, with a plan for phasing out such supplementation during a reasonable period of time subsequent to January 1, 1971.

S.Rep.No.744, 90th Cong., 1st Sess. 187–188, *reprinted in* [1967] U.S.Code Cong. & Ad. News 2834, 3026.

The current supplementation regulation provides that "[a] State plan must provide that the Medicaid agency must limit participation in the Medicaid program to providers who accept as payment in full, the amounts paid by the agency." 42 C.F.R. § 447.15 (1980). D.P.W. Rule 47(F)(1) is substantially similar to the federal regulation and has been interpreted by the D.P.W. to prohibit

---

**2.** Rule 47(F)(1) was promulgated on Sept. 6, 1977.

a nursing home from receiving *any* payments from an M.A. recipient, her relatives or friends. We do not read Rule 47(F)(1) so expansively.

The practical effect of the agency interpretation would be to bar voluntary contributions for the care and comfort of M.A. recipients by their relatives and friends. The bar would not apply to payments for private rooms alone. Rather, the D.P.W. interpretation would prohibit payments for such items as electric wheelchairs, mechanical beds, telephone service, and the like. All indications are that these items were not intended to be included within this proscription.

It is clear from the federal legislative history that Congress was concerned with only a nursing home's receipt of payments by an M.A. recipient, her relatives or friends for items or services provided by Medicaid. The legislative history above quoted continues as follows:

*Any limitations in supplementation are not intended to preclude additional payments for the reasonable costs or charges for non-standard nursing home services such as private room, telephone, television, et cetera, nor would they in any way affect the payment toward the reasonable costs of care by a patient who has income in excess of the amount the State determines is needed for his personal expenses other than nursing home care.*

*Id.* at 3026. (emphasis added). H.E.W. Mem., PIQ.—MMB–77–15, (Dec. 19, 1977) referred to the above legislative history when it set forth the following question and answer:

Q. Can a relative pay an additional amount to have a Title XIX recipient placed in a private room?

A. Yes * * * [b]ased upon this Senate Finance Committee report, our interpretation is that States cannot prohibit a payment by a relative or other party to obtain a private room.

■ As we read Rule 47(F)(1), it applies solely to supplementation for items covered by Medical Assistance. The rule requires the acceptance "as payment in full,

amounts paid in accordance with D.P.W.'s maximum allowable charges." 12 M.C.A.R. § 2.047(F)(1) (1978). The D.P.W. does not have maximum allowable charges for non-medical Assistance items, so it is only reasonable to conclude that such items are not included within the rule.

Our interpretation of Rule 47(F)(1) is not inconsistent with the purpose of the rule. Rule 47(F)(1) prohibits nursing homes from soliciting payments from an M.A. recipient, her relatives or friends for M.A. covered items. The rule is directed toward controlling the conduct of nursing homes, not toward restricting the generosity of the relatives and friends of an M.A. recipient.

■ Having determined that D.P.W. Rule 47(F)(1) does not prohibit payments for non-M.A. covered items, we must decide a more difficult question: whether a contribution made by an M.A. recipient's daughter toward the cost of a private room for the M.A. recipient-mother, for which the mother does not have a medical need, constitutes income to the M.A. recipient mother? We hold that it does not.

Plaintiff meets the eligibility requirements for participation in the "medically needy" section of the M.A. program. MINNESOTA STATE PLAN FOR MEDICAL ASSISTANCE, attachment 2.6–C at 2 (approved Sept. 19, 1976). The "medically needy" section is for the benefit of persons over the age of 65 who have income exceeding the level which would qualify them for cash assistance, but have income and resources insufficient to meet the costs of the medical care and services they need. *id.* at 3, 42 U.S.C. § 1396a(a)(10)(C) (1977); 42 C.F.R. §§ 435.300–435.325 (1980). Under this program, the cost of medical care is not borne entirely by the government. Rather, a medically needy person must apply a portion of her income to meet her medical expenses. The amount she must apply is called spend-down.

The Legislature has set out the method for determining the amount a recipient must "spend-down", or apply to the cost of her medical care in Minn.Stat.

§ 256B.06(1)(10) (1980) which states in relevant part: "In licensed nursing homes and state hospital cases, income over and above that required for justified needs, determined pursuant to a schedule of contributions established by the commissioner of public welfare, is to be applied to the cost of institutional care * * *." If the payments by the plaintiff's daughter are income to the plaintiff, they must be applied to the nursing home costs paid for by M.A. pursuant to the spend-down requirements.[3]

Although the spend-down provision speaks to income, it does not define it. The provision is not relevant to the determination of income, and has effect only after that determination has been made. The method for determining income is found in the state plan.

As a prerequisite to participation in the Medicaid program, a state must file a plan with the Secretary of H.E.W. which includes:

reasonable standards * * * for determining eligibility for and the extent of medical assistance under the plan which (A) are consistent with the objectives of this subchapter, (B) provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient and * * * in determining his eligibility for such aid, assistance or benefits, (C) provide for reasonable evaluation of any such income or resources and (D) do not take into account the financial responsibility of any individual for any applicant or recipient of assistance under the plan unless such applicant or recipient is such individual's spouse or such individual's child who is under age 21 * * *.

42 U.S.C. § 1396a(a)(17) (1977). The plan filed by this state provides that, for the purpose of determining eligibility, income is defined as "Net income, computed as follows: Gross less maditory (sic) deductions and reasonable expenses required to earn the income." MINNESOTA STATE PLAN FOR MEDICAL ASSISTANCE, *id.*, attachment 2–6–A at 4. The plan further provides that when determining the net income of aged individuals, the "disregards,"[4] or exclusions from income, of the Supplemental Security Income program (S.S.I.), 42 U.S.C. §§ 1381–1383c (Supp.III 1979), be applied. *Id.*, attachment 2–6–C at 4; 20 C.F.R. §§ 416.1101–416.1190 (1980). The disregard most germane to this case provides that "[t]he term income does not include the value of any third-party payment for medical care or medical services furnished to a beneficiary. This exclusion from income also applies to room and board furnished during medical confinement and paid for by such third party." 20 C.F.R. § 416.1109(a) (1980). We are asked to decide whether this regulation, excluding from income third party payments for medical care, supports the trial court's decision that the payments to be made by plaintiff's daughter are not income.

The language of this regulation provides us with little guidance as to the intended scope of its application. We are troubled by the application of this regulation to the payments in the instant case for the "room" being furnished by plaintiff's daughter is not medically necessary and plaintiff's medical confinement is long term. However, we conclude that this regulation, as written, does have application to the payments to be made by plaintiff's daughter in the instant case. These payments may not, therefore, be considered by the D.P.W. in the determination of plaintiff's income.

The language of the regulation expresses no requirement that the medical care or services provided be "necessary". Neither is the qualifier "short term" included in the phrase "medical confinement". These restrictions could easily have been included in the regulation. Therefore, there is no rule

---

**3.** The payments by the daughter could make the plaintiff ineligible for M.A. However, this will not happen, as the daughter will pay no money unless her mother can have a private room.

**4.** A "Disregard" is a resource of an individual which is not considered in the determination of income of that individual.

of construction that would permit the D.P.W. to interpret this "disregard" as incorporating these limitations. *See Richardson v. Floyd*, No. 77–CP–26–519 (S.C.Ct. C.P., filed Feb. 2, 1978).

Our research has produced only two published opinions which discuss this regulation. *Slavin v. Secretary of Health, Education and Welfare*, 486 F.Supp. 204 (S.D.N.Y. 1980); *Lapin v. Mathews*, 422 F.Supp. 1089 (D.D.C.1976). In each case, the applicant for S.S.I. Benefits resided in a long term care facility. Both the *Slavin* and *Lapin* courts found the disregard to be inapplicable, not because the confinement was long term, but because the care given by the facility was custodial, not medical. *See* 20 C.F.R. § 416.1125 (1980). There is no dispute that, in the instant case, the plaintiff is in medical confinement. We conclude, therefore, that the payments to be made by the plaintiff's daughter are third party payments for medical care and are properly disregarded in the determination of plaintiff's income.

Two additional arguments are advanced in support of the conclusion that these payments are not income: (1) that the payments are not resources available to the plaintiff, 42 U.S.C. § 1396a(a)(17); (2) that they do not provide her with "in-kind" income. Although at first glance these arguments appear plausible, upon close examination we find neither convincing.

In the instant case, the plaintiff's daughter intends to make the payments directly to the nursing home. Therefore, it is argued that the payments are not available to plaintiff, availability being defined as within the possession and control of the M.A. recipient. As support for this definition, we are cited to *Murphy v. Hiniker*, 261 N.W.2d 836 (Minn.1978).

The issue presented in the *Murphy* case was whether a rent credit received by an A.F.D.C. recipient was income to that person, for purposes of determining continuing eligibility. We found the payment not to be income because it was, in reality, a return of A.F.D.C. grant monies expended on shelter, not withheld income returned, as is the case with tax refunds. While the opinion did include some discussion of an applicant's control of the refund, it was relevant only to a comparison of tax refunds with rent credits. It did not establish a requirement that the proceeds be within the applicant's control.

We find the better approach to be that "available", in cases such as the one at bar, be defined as "actually made". As the Fifth Circuit Court of Appeals noted: "Any contributions actually made by relatives or friends, or from other sources, will be taken into account by the State in determining whether the individual applying for medical assistance is, in fact, in need of such assistance." *Norman v. St. Clair*, 610 F.2d 1228, 1237 (5th Cir. 1980), citing S.Rep.No.404, 89th Cong., 1st Sess. 78, *reprinted in* [1965] U.S.Code Cong. & Ad.News, 1943, 2018. While the plaintiff has no legal right to compel her daughter to make these payments, once made, they are a resource available to her and would be considered income under this analysis.

The second contention is that the payments are not "in-kind" income to plaintiff, and therefore should not be considered in the determination of plaintiff's income. In-kind income is defined in the Minnesota Medical Assistance Manual as being: "a resource in meeting the needs of the individual/family. In-kind income is only to be considered if it provides a maintenance benefit to the applicant/recipient." Minnesota Dep't of Public Welfare, Medical Assistance Program Manual, IV–H–6 (July 1, 1977).

It is argued that the payments made by the daughter are not fulfilling a maintenance need of plaintiff and, therefore, are not "in-kind" income. She characterizes her private room as an "extra" because her basic M.A. benefits provide her with a room. We find little merit in this argument. Perhaps these payments will provide plaintiff with "better" shelter, but it is shelter nonetheless. The payments would constitute in-kind income to her.

Thus, while these resources are available to the plaintiff, *see* 42 U.S.C. § 1396a(a)(17) (1977), and provide her with a maintenance

benefit, *see* Medical Assistance Program Manual, *supra*, at IV–H–6, they are not income to the plaintiff for purposes of M.A. eligibility because they are third party payments for medical care or services and properly "disregarded" in the determination of plaintiff's income. 20 C.F.R. § 416.1109(a) (1980). We hold that D.P.W. Rule 47(F)(1) does not prohibit a nursing home from receiving payments for non-MA covered items and services and that, in the instant case, the payments to be made by plaintiff's daughter for a private room for plaintiff are not income to the plaintiff because they are third party payments for medical care or services. 20 C.F.R. § 416.1109(a) (1980).

Affirmed.

SCOTT, J., took no part in the consideration or decision of this case.