**In the Matter of the CONTESTED CASE OF EBENEZER SOCIETY, et al., Relators,**

**v.**

**MINNESOTA DEPARTMENT OF HUMAN SERVICES, Respondents.**

**No. C1-88-1384.**

Court of Appeals of Minnesota.

Dec. 20, 1988.

Samuel D. Orbovich, Susan M. Schaffer, Broeker, Geer, Fletcher & Lafond, Ltd., Minneapolis, for relators.

Hubert H. Humphrey, III, Atty. Gen., Kim Buechel Mesun, Sp. Asst. Atty. Gen., St. Paul, for respondents.

Heard, considered and decided by LANSING, P.J., and NIERENGARTEN and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

The relators Aicota Nursing Home, Inc., Augustana Nursing Home, Inc., Lakeside Nursing Home, St. Otto's Home and St. Francis Home are medical assistance providers entitled to reimbursement for the care of needy persons under the Title XIX Medical Assistance Program in the State of Minnesota. 42 U.S.C.A. § 1396a(a)(5) (West Supp.1988); 42 C.F.R. § 431.10 (1987); Minn.Stat. § 256B.41–.502 (1986). For the rate-setting period in question, November 1, 1985 to June 30, 1986, the nursing homes' rates were governed by Minn.R. 9549.0010–.0080, commonly referred to by the Department of Human Services as Rule 50P (or Rule 50 Permanent). This reimbursement period was the first governed by Rule 50P, which came into effect June 14, 1985, pursuant to Minn.Stat. § 256B.41–.502 (1986).[1]

---

1. While Rule 50P was to become effective for rate year starting July 1, 1985, part of the rule was not implemented until November 1, 1985. The legislature enacted an interim statute effective for the period July 1 to October 31, 1985. Minn.Stat. § 256B.431, subd. 4(c) (1986). For the two rate years from July 1, 1983 to June 30, 1985, rates were determined by a temporary rule, commonly referred to as Rule 50T (or Rule 50 Temporary). 12 Minn.Code Agency R. § 2.05001–.05016. From 1972 through June 30, 1983, rates were governed by Rule 49, now codified at Minn.R. 9510.0010–.0480 (1987).

Rule 50P and its predecessors set forth a scheme of reimbursement which depends upon classification of expenses into nine categories.[2] Relators contend the Commissioner erred in classifying certain food costs as general and administrative services, a category which is subject to a ceiling on reimbursements. The food costs allocated by the Commissioner constitute expenses in excess of the ceiling. *See* Minn.R. 9549.0055 (Supp.1988).

We reverse the Commissioner's decision, concluding that adoption of a formula to identify a new category of food expenses contradicts the plain meaning of Rule 50P, and that the adoption of the formula without rulemaking process is invalid.

## FACTS

The nursing homes submitted cost reports on or about December 30, 1984, for the rate year beginning on July 1, 1985, based on their experience for the period October 1, 1983 to September 30, 1984. During April through June 1985, the Department requested from the nursing homes cost information on the consumption of meals by staff or visitors. This information was not requested from Augustana because it had a separate cafeteria for staff, and its bookkeeping records already reflected the separate expenses for the two dining rooms. At or about this same time, the Department adopted a formula to calculate the food costs attributable to the meals consumed by staff.[3]

Having so identified the employee food costs for each nursing home, the Department concluded that they were no longer dietary, but constituted a separate category. The Department then concluded the new category of costs had to be treated as direct costs in the general and administrative services cost category because it was "non-classifiable."[4]

The nursing homes protested and the Administrative Law Judge agreed the Department had erred. The ALJ found the plain meaning of Rule 50P is ambiguous at best, and after reviewing legislative intent, past reporting practice, the rulemaking record, and relevant case law, the ALJ made the following conclusion:

While there has not been an express interpretation of the rule by DHS, the longstanding practice under the previous rules on the same subject refute, rather than support, the interpretation of the Department. Because the Department's calculations clearly met the statutory definition of a rule and because it has failed to comply with rulemaking procedures in regard thereto, the reclassifications are invalid.

The Commissioner found the classification of employee meal costs under the general and administrative services category is con-

---

2. Minn.R. 9549.0020, subpt. 32 (1986), part of Rule 50P, provides:
   "Operating costs" means the costs of operating the nursing home in compliance with licensure and certification standards. Operating cost categories are:
   A. nursing, including nurses and nursing assistants training;
   B. dietary;
   C. laundry and linen;
   D. housekeeping;
   E. plant operation and maintenance;
   F. other care-related services;
   G. general and administrative;
   H. payroll taxes, fringe benefits, and clerical training; and
   I. real estate taxes and actual special assessments paid.

3. The Department first calculated the cost of the average meal by determining the gross dietary costs and dividing this figure by the total number of meals consumed by residents and non-

residents. The cost for employee meals was calculated by multiplying the cost of the average meal by the number of meals consumed by the employees. The employee meal benefit is considered the cost for employee meals reduced by the amount of employee meal revenue.

4. Included in the general and administrative services cost category are "[d]irect costs for administering the overall activities of the nursing home." Minn.R. 9549.0040, subpt. 7 (1987). Included in a list of the direct costs are "any costs which cannot be specifically classified to another cost category." Minn.R. 9549.0040, subpt. 7Y (1987). In addition, the rules provide:
   Costs that cannot be specifically classified in a cost category, such as the cost of generic supplies, must be classified in the general and administrative cost category.
   Minn.R. 9549.0030, subpt. 1 (1987).

sistent with the plain meaning of Rule 50P, and therefore overruled the ALJ.

## ISSUE

Did the Commissioner undertake invalid rulemaking by creating a category of expenses for meals consumed by staff?

## ANALYSIS

This court may affirm or reverse the administrative decision if it is "made upon unlawful procedure; * * * affected by other error of law; or * * * arbitrary and capricious." Minn.Stat. § 14.69 (1986).

As a general rule, we must defer to an "agency's interpretation when the language subject to construction is so technical in nature that only a specialized agency has the experience and expertise needed to understand it, * * * when the language is ambiguous or when the agency interpretation is one of long standing." *Resident v. Noot,* 305 N.W.2d 311, 312 (Minn.1981) (citations omitted). However, if the agency's conclusions are based on legal rather than factual considerations, the court "need not defer to the agency's expertise." *In re Minnesota Joint Underwriting Association,* 408 N.W.2d 599, 605 (Minn.Ct.App. 1987). This court will not defer to an agency decision "when the language employed or the standards delineated are clear and capable of understanding." *Resident v. Noot,* 305 N.W.2d at 312.

The term "rule" means "every agency statement of general applicability and future effect * * * adopted to implement or make specific the law enforced or administered by it." Minn.Stat. § 14.02, subd. 4 (1986). Rules must be adopted in accordance with the rulemaking requirements of the Minnesota Administrative Procedure Act. Minn.Stat. § 14.05, subd. 1 (1986). *See White Bear Lake Care Center, Inc. v. Minnesota Department of Public Welfare,* 319 N.W.2d 7, 9 (Minn.1982) ("the failure to comply with the necessary procedures results in invalidity of the rule"); *Johnson Brothers Wholesale Liquor Co. v. Novak,* 295 N.W.2d 238, 242–43 (Minn.1980).

■ "An agency interpretation that 'make[s] specific the law enforced or ad-ministered by the agency' is an interpretive rule that is valid only if promulgated in accordance with the [Minnesota Administrative Procedure] Act." *Mapleton Community Home, Inc. v. Minnesota Department of Human Services,* 391 N.W.2d 798, 801 (Minn.1986) (quoting *Minnesota–Dakotas Retail Hardware Association v. State,* 279 N.W.2d 360, 364 (Minn.1979)); *see also* Minn.Stat. § 14.05, subd. 1 (1984). An agency's interpretation will not always constitute a new rule:

> [I]f the agency's interpretation of a rule corresponds with its plain meaning, or if the rule is ambiguous and the agency interpretation is a longstanding one, the agency is not deemed to have promulgated a new rule.

*Cable Communications Board v. Nor–West Cable Communications Partnership,* 356 N.W.2d 658, 667 (Minn.1984) (citing *White Bear Lake,* 319 N.W.2d at 8).

■ The Commissioner contends the Department followed the plain meaning of the rule in categorizing a class of expenses which is non-classified. *See* Minn.R. 9549.-0030, subpt. 1; 9549.0040, subpt. 7; 9549.-0040, subpt. 7Y; and, *see supra* n. 3. The Commissioner's argument, however, assumes the legitimacy of its original decision to create and identify a consumption based category and to adopt a formula for that purpose. The new classification is not included in Rule 50P and contradicts the evident breadth of the category on dietary expense. The rule divides this category into sources of expense but is stated indivisibly as concerns the persons who consume food used in the nursing home enterprise. This introduction of a new standard without rulemaking process is invalid.

A new department standard, even if not in accordance with the plain meaning of the rule, is permissible if the rule is ambiguous and if longstanding administrative interpretation supports it. *See White Bear Lake,* 319 N.W.2d at 8. The rule in this case is not ambiguous.

The provisions of Rule 50P only became ambiguous upon creating the new employee food category from within the dietary

services category. Moreover, in this instance the Commissioner has operated since 1972 under almost identical rules and has at no time attempted to divide dietary services into consumption categories. Prior to the nursing homes' 1985 cost reports, the Commissioner said nothing to suggest the significance of the fact that meals on premises were consumed by residents, visitors or by staff.[5]

Also, since 1972, the Commissioner had regulated in the dietary expenses category the careful reporting of revenue from meals paid for by staff, visitors or in connection with the meals on wheels program. The regulation of income reporting did not at any time include a division of dietary costs.

The consistency of the Department's prior practice is a substantial consideration to suggest its acquiescence in an inclusive interpretation of the dietary services category. *Cable Communications Board,* 356 N.W.2d at 667. Assuming the possibility of any ambiguity with the breadth of the dietary services category, the broad meaning of that category has been accepted by the Department's acquiescence in its practices since 1972. This conclusion is supported by the ALJ's conclusion:

> [T]he Department's action (or inaction) resulted in acquiescence of the classification of costs by the nursing home and an interpretation, albeit implicit, of relevant rule provisions. Since the rulemaking record does not evidence any intent on the part of the Department to adopt a different interpretation under Rule 50, the interpretation now urged by the Department is an unpromulgated rule and is invalid.

The Commissioner contends on appeal that creating subcategories of food expenses based on consumption of meals is consistent with the purposes of Rule 50P as they reflect a new attitude of strict attention to standards for controlling reimbursement claims. It is true that an attitude of strictness is suggested in the documentation for Rule 50P. In related legislation, the 1983 Minnesota Legislature stated that "controlling expenditures for nursing home care is essential to prudent management of the state's budget." *See* Minnesota Department of Human Services, Statement of Need and Reasonableness, In the Matter of the Proposed Rules of the Minnesota Department of Human Services Establishing Procedures for Determining Payment Rates for All Nursing Homes Participating in the Medical Assistance Program (Minnesota Rules 9549.0010–9549.0080 [Proposed]) 3 (March 7, 1985) [hereinafter Statement of Need and Reasonableness]; Minn.Stat. § 144A.071 (1986) (moratorium on certification of nursing home beds). In the nursing home rates legislation, the 1983 Legislature authorized the Commissioner of Human Services to set procedures based on standards which "are adequate to provide for the costs that must be incurred for the care of residents in efficiently and economically operated nursing homes and shall specify the costs that are allowable." Minn.Stat. § 256B.41, subd. 1 (1986).

We are bound to look at the particular categories adopted in the rule and can not supplement those to uphold the rulemakers general purpose. *See* Minn.Stat. § 645.16 (1986). Neither of the particular steps the Department took in adoption of Rule 50P establish the legitimacy for the division of dietary expenses according to consumption of meals. One of the purposes of Rule 50P

---

**5.** Rule 49 required reporting of costs in the following eight categories: nursing; dietary; laundry and linen; housekeeping; plant operation and maintenance; other care-related services; general and administration; and miscellaneous nonreimbursable services and expenses.

Rule 50 Temporary required reporting of costs in the following 10 categories: dietary services; laundry and linen services; housekeeping services; plant operation and maintenance services; nursing services; other care-related services; general and administrative services; payroll tax-

es and fringe benefits; real estate taxes and special assessments; and property-related costs. Now, Rule 50 Permanent requires reporting of costs in the following nine categories: dietary services; laundry and linen services; housekeeping services; plant operation and maintenance services; nursing services; other care-related services; general and administrative services; payroll taxes, fringe benefits, and clerical training; real estate taxes and special assessments.

was to accomplish a better classification of expenses, but the fulfillment of this purpose was to adopt the rule, with its nine classifications. Statement of Need and Reasonableness, at 3 (aim for better classification), and at 14 (rule embodies cost classification). A second particular purpose of the rule was to control reimbursement for expenses not incurred, a purpose which is not germane to the Department's purposes of controlling employee meals.

Relators contend, and we agree, the Commissioner's action is controversial and the natural subject of rulemaking. Breaking the dietary services category into subcategories may be illogical because staff use of the nursing home dining facility is related to residential care, and because the meal cost which the Department divides between residents and others includes costs uniquely attributed to the special dietary needs of residents. While the Commissioner identified and reclassified staff meals, the same step has not been taken for visitors' meals.

Relators also argue that several findings and conclusions of the Commissioner arbitrarily conflict with observations of the ALJ. Because we conclude the Commissioner's decision is improperly founded on an interpretive rule, we need not address these contentions.

## DECISION

The Department's identification and reclassification of the employee meal costs is not consistent with the plain meaning of Rule 50P. The language of the rule is not ambiguous, and the Department had a contrary longstanding practice which accepted a broad interpretation of the dietary services category. The Department's new interpretive rule was not adopted according to proper administrative procedure, and is thus invalid.

Reversed.