**In the Matter of the Denial of ELLER MEDIA COMPANY'S APPLICATIONS FOR OUTDOOR ADVERTISING DEVICE PERMITS in the City of Mounds View, Minnesota.**

**Department of Transportation.**

**Nos. C0–01–1695, C5–01–1708.**

Court of Appeals of Minnesota.

April 23, 2002.

Marvin A. Liszt, David K. Nightingale, Bernick and Lifson, P.A., Minneapolis, for relator Eller Media Company.

Karen R. Cole, Kennedy & Graven, Chartered, Minneapolis, for relator City of Mounds View.

David L. Phillips, Assistant Attorney General, St. Paul, for respondent Minnesota Department of Transportation.

Considered and decided by RANDALL, Presiding Judge, LANSING, Judge, and KLAPHAKE, Judge.

## OPINION

R.A. RANDALL, Judge.

In these consolidated zoning disputes, relators Eller Media Company ("Eller Media") and the City of Mounds View ("city") seek review of respondent Minnesota Department of Transportation's ("DOT") denial of the Eller Media's applications to place six billboards in the city. Relators allege that the commissioner's deputy (1) erred in concluding that the city's public facilities zone was not a "business area" under Minn.Stat. § 173.08, subd. 1(8) (2000) by reading "business area" to refer to private business exclusively, rather than municipalities, and (2) erred in concluding that the city's actions were inconsistent with 23 C.F.R. § 750.708 (2000). Eller Media also asserts that the commissioner's deputy erred in finding that the rezoning of the area was not in compliance with the city's comprehensive zoning ordinance and that the DOT denied the company due process by not giving the company adequate notice of the reasons for the denial of the company's applications. The city also argues that the commissioner's deputy failed to give the city's zoning deference due under Minn.Stat. § 173.16, subd. 5 (2000). We reverse in part, affirm in part, and remand.

## FACTS

Eller Media is engaged in the business of outdoor advertising, and the city is a municipal corporation. The DOT is responsible for issuing permits for the erection of outdoor advertising devices in areas adjacent to the right-of-way of an interstate or trunk highway. Minn.Stat. § 173.02, subd. 8 (2000).

In 1982, the city adopted a comprehensive zoning plan. The plan designated the property north of Highway 10 as Industrial. In 1984, the city adopted a comprehen-

sive zoning ordinance that rezoned most city owned property as Public Facilities ("PF") district. The PF district's purpose is "to provide for land areas, waterways and water areas owned, controlled, regulated, used or proposed to be used by the City." Permitted uses in the PF district include public buildings and uses; public parks, playgrounds, athletic fields, parking areas, and golf courses; public sewers, water lines and water storage areas; public streets, easements and other public ways, highways and thoroughfares; treatment and pumping facilities and other public service facilities.

Also in 1984, the city rezoned the property on which the five proposed easterly billboards would sit, from Industrial to Conservancy, Recreation, and Preservation ("CRP") district. The purpose of the CRP district is to "permit the development of major recreational use facilities" on city lands, and "[s]uch recreational use development shall be designed to conserve, preserve and enhance the environment, important natural features and resources, forests and woodlands and control density * * *."

In 1988, the state conveyed to the city the property on which the three proposed most easterly billboards would sit by a quitclaim deed that provided that the property would revert to the state if not used by the city for a public purpose. The city did not change the zoning; it remained CRP. In 1989, Sysco Foods conveyed property to the city that was located to the west of the property granted to the city by the state. The city rezoned the property received from Sysco from industrial to PF.

In 1994 & 1995, the city built and opened The Bridges Golf Course ("the golf course") on the property north of Highway 10. Three PGA trained professionals run the clubhouse and give lessons. The golf course has a pro shop that sells merchandise, golf clubs, balls, and shoes to the public. A small snack bar serves hot dogs, pizza, beer, and soda. The golf course's liquor license is held in the name of the golf course manager. The city's residents do not receive a discounted rate to use the golf course, partially because the course was designed to produce revenue for the city and it was to be paid for by the users. The rates are "the highest or equal to the highest in the area for other nine hole golf courses." The city advertises the golf course as a "State of the Art Learning Center," and the golf course appears in *Golf Minnesota* magazine's 2000 directory issue. The city maintains a loss of business insurance policy on the property and does not maintain business policies on any other city operations. In 1999, the golf course generated $768,000 in revenue but incurred a net loss of $49,000.

Because the golf course revenues were not sufficient to cover the golf courses' bond assessment, the city examined ways to increase revenue. In March 1999, the city began considering billboards as an option to generate revenue. On February 14, 2000, the city passed Ordinance No. 637, which allowed on-premise billboards as interim use in PF, CRP, and PUD districts, and Ordinance No. 644, which allowed billboards in a limited district along and north of State Highway 10.[1]

On March 27, 2000, the city passed an ordinance that rezoned the property on which the five easterly billboards were sit-

---

1. The February 14, 2000, ordinance permitted the use of billboards as an interim use upon obtaining a conditional use permit (CUP). On March 27, 2000, the city amended the ordinance again by providing that an interim use permit (IUP) rather than a CUP was required for interim use of billboards.

uated from CRP to PF. The city's community development director testified that zoning was changed from CRP to PF "to bring the golf course land use * * * into consistency with the city zoning code" and that he was "[a]bsolutely sure" that the property was not rezoned to allow billboards. He further testified that the golf club manager indicated in 1997 that the zoning should be changed to PF, but because of staff turnover, the matter was overlooked. City-council-meeting minutes from April 1999 indicate that the city council thought the property was zoned PF at that time. Under the city's zoning scheme, if the golf course was privately owned, it would be zoned Highway Business District, B–3 or Regional Business District, B–4. The areas surrounding the golf course property are zoned heavy or light industrial, warehouse, or office park.

Also on March 27, 2000, the city approved a resolution to allow Eller Media to construct six billboards on the golf course site and adjacent property. The proposal would provide the city with $4,915,124 during the 15 year term of the lease.

In May 2000, Eller Media submitted six applications to the DOT requesting permits for construction of the billboards. On June 9, 2000, the DOT denied Eller Media's applications, stating that the locations did "not meet the requirements of the Minnesota Outdoor Advertising Control Act for the erection of Outdoor Advertising Devices."

The record shows that DOT previously granted sign permits to Eller Media for other property that is owned by governmental agencies including property owned by the Minneapolis Community Development Agency, the MTC Company (a bus company that is municipally owned), the

Minnesota State Fair Board, and the Metropolitan Airport Commission. The DOT has also granted sign permits for the Lost Spur Golf Course in Eagan, Minnesota. Unlike the city's golf course, Lost Spur has a banquet facility, restaurant, and large bar. But Lost Spur does not have a large driving range like the city's golf course. The city's golf course had higher revenues than Lost Spur in 1999. Like the city's golf course, the Lost Spur property is zoned PF.[2]

On December 8, 2000, the parties appeared at a hearing before an administrative law judge ("ALJ"). In February 2001, the ALJ issued an order recommending the permits be approved. In September 2001, however, the commissioner's deputy issued an order denying Eller Media's permits on the grounds that (1) the golf course property was not a "business area" under Minn.Stat. § 173.08, subd. 1(8) (2000) and (2) the city's zoning was not part of a comprehensive zoning plan and thus was inconsistent with 23 C.F.R. § 750.708 (2000). This appeal follows.

## ISSUES

I. Did the commissioner's deputy properly interpret Minn.Stat. § 173.08, subd. 1(8) (2000)?

II. Did the commissioner's deputy properly interpret 23 CFR § 750.708 (2000)?

III. Did the DOT deny Eller Media's due process by not giving it adequate notice of the reasons for the denial of the its applications?

IV. Did the commissioner's deputy fail to give the city's zoning the deference due to legislative determina-

---

**2.** Eagan's PF designation differs slightly from the city's in that it also lists churches, schools, and hospitals as permitted uses.

tions under Minn.Stat. § 173.16, subd. 5 (2000)?

## ANALYSIS

### I. Business Area Designation

■ Eller Media and the city argue that the commissioner's deputy improperly concluded that the city's public facilities zone was not a "business area" under Minn. Stat. § 173.08, subd. 1(8) (2000) by reading "business area" to refer to private business rather than municipalities and determining a zoning classification based upon ownership rather than use of the property.

■ Judicial review of an agency decision in a contested case is governed by Minn.Stat. §§ 14.63–.69 (2000). This court may reverse the agency's decision if the decision is unsupported by substantial evidence, arbitrary or capricious, or affected by other error of law. *In re the Matter of Indep. Spent Fuel Storage Installation,* 501 N.W.2d 638, 642 (Minn.App.1993), *review denied* (Minn. July 15, 1993) [hereinafter *Spent Fuel Storage* ]. An agency's decision is arbitrary and capricious where "its determination represents its will and not its judgment." *Markwardt v. State Water Ress. Bd.,* 254 N.W.2d 371, 374 (Minn.1977) (citation omitted). In considering questions of law, "reviewing courts are not bound by the decision of the agency and need not defer to agency expertise." *St. Otto's Home v. Minn. Dep't of Human Servs.,* 437 N.W.2d 35, 39–40 (Minn.1989) (citations omitted). A legal question is presented when an agency's decision turns on the meaning of words in a statute. *Id.* at 39. Accordingly, whether the city's golf course is a "business area" under Minn. Stat § 173.08, subd. 1(8) is a question of law, which we review de novo.

Minn.Stat. Ch. 173 (2000) is Minnesota's Outdoor Advertising Control Act ("the Act"). The purpose of the Act is to "con-

serve the natural beauty of areas adjacent to certain highways" by regulating and controlling the erection of advertising devices on land adjacent to highways. Minn. Stat. § 173.01. But the Act recognizes that because

> outdoor advertising is an integral part of the business and marketing function * * *, it should be allowed to operate where other business and commercial activities are conducted * * *.

Minn.Stat. § 173.01.

Minn.Stat. § 173.08 prohibits outdoor advertising in an "adjacent area," which is "any area adjacent to the right-of-way of an interstate or trunk highway." Minn. Stat. § 173.02, subd. 8. But Minn.Stat. § 173.08 lists several exceptions to the prohibition, including Minn.Stat. § 173.08, subd. 1(8), which allows

> advertising devices which are located, or which are to be located, in business areas and which comply, or will comply when erected, with the provisions of sections 173.01 to 173.27;

Minn.Stat. § 173.02 subd. 9 defines "business area" as

> any part of an adjacent area which is (a) zoned for business, industrial or commercial activities under the authority of any law of this state or any political subdivision thereof; or (b) not so zoned, but which constitutes an unzoned commercial or industrial area as herein defined.

The Act requires the commissioner to "comply with federal law and federal rules and regulations relating to billboard control on the interstate and primary systems." Minn.Stat. § 173.185. Under 23 C.F.R. § 750.703(a) (2000), commercial and industrial zones

> are those districts established by the zoning authorities as being most appropriate for commerce, industry, or trade,

*regardless of how labeled.* They are commonly categorized as commercial, industrial, business, manufacturing, highway service or highway business (when these latter are intended for highway-oriented business), retail, trade, warehouse, and similar classifications.

(Emphasis added). Minnesota courts have not interpreted the scope of "business area" in Minn. Stat §§ 173.08, subd. 1(8) and 173.02, subd. 9, and thus, this is a case of first impression.

The commissioner's deputy adopted the ALJ's findings detailing the golf course activities and income. The findings establish that the golf course has 24,000 to 30,000 customers a year, generates $800,000 in revenue annually, contains high maintenance turf requiring constant water with the use of an irrigation system, does not give residents a discount, holds a liquor license, and spends $10,000 a year on advertising. But contrary to the ALJ's conclusion, the commissioner's deputy determined that the golf course does not constitute a "business area" under Minn. Stat §§ 173.08, subd. 1(8) and 173.02, subd. 9. The deputy commissioner concluded that because the property was zoned PF, it was intended for public use and was not "most appropriate for commerce, industry or trade" as is required under 23 C.F.R. § 750.703(a). The deputy commissioner acknowledged that the DOT interprets "business" to refer to private business, not municipal activities.

First, the definition of business area in Minn.Stat. § 173.02 subd. 9(a) is not ambiguous.[3] "Business area" means any part of an adjacent area that is "zoned for business, industrial or commercial activities under the authority of any law of this state or any political subdivision thereof."

*Id.* The statute requires that the area be zoned for business, industrial or commercial *activities,* not that the zoning label state business, industrial or commercial. The statute does not exclude government entities from engaging in business, industrial or commercial activities.

Second, federal regulations with which the commissioner must comply state that commercial and industrial zones "are those districts established by the zoning authorities as being most appropriate for commerce, industry, or trade, *regardless of how labeled.*" 23 C.F.R. § 750.703(a) (emphasis added). The commissioner focused on the language "as being most appropriate" for commerce, industry, or trade. But this ignores the "regardless of how labeled" language, ignores the actual use of the land, and results in a decision based solely on the zoning label. Additionally, the areas surrounding the golf course property are zoned heavy or light industrial, warehouse, or office park, and thus, the area is "most appropriate" for commerce, industry, or trade.

Third, the law has long recognized that cities engage in business activities. Minnesota's legislature has expressly granted cities the power to engage in proprietary activities. *See, e.g.,* Minn. Stat § 360.032 (2000) (airports); Minn.Stat. § 412.211, subd. 22 (2000) (sewage and garbage disposal); Minn.Stat. § 412.321 (2000) (gas, light, power and utility services); Minn.Stat. § 459.14 (2000) (automobile parking facilities); Minn.Stat. § 412.221, subd. 16 (2000) (hospitals); Minn.Stat. § 471.191 (2000) (golf courses, marinas, concert halls, museums, swimming pools, arenas, and athletic fields). Similarly, case law recognizes that cities

---

**3.** Even if the language could be construed as ambiguous, we conclude the commissioner's deputy's interpretation is unreasonable. *See*

*St. Otto's Home,* 437 N.W.2d 35, 41 (reversing agency's definition of term because it was unreasonable).

act in a proprietary capacity by providing certain services and operating certain facilities. *See e.g., S. Minn. Mun. Power Agency v. Boyne,* 578 N.W.2d 362, 364–65 (Minn.1998) (recognizing legislature granted SMMPA authority to run its affairs like private corporation); *City of Staples v. Minn. Power & Light,* 196 Minn. 303, 305, 265 N.W. 58, 59 (1936) (water and electric service). Moreover, just like businesses, employees and officers of municipalities are subject to liabilities for their torts when acting within the scope of their employment or duties. Minn.Stat. § 466.02 (2000).

The commissioner's deputy recognized that cities engage in proprietary functions, but nonetheless determined that it "has little relevance to the determination of whether the PF zone is a 'business, industrial or commercial zone' for purposes of the Act." The commissioner's deputy noted that the distinction between proprietary and governmental functions applies in cases involving tort liability, constitutional issues, immunity, or estoppel issues but that such a distinction does not apply in zoning cases.[4] This interpretation ignores the longstanding recognition that cities engage in proprietary activities and ignores the DOT's previous practices of granting permits for billboards on government-owned land and for a privately owned golf course in a PF district. Based on the longstanding law that recognizes that cities engage in various proprietary activities, the plain language of Minn.Stat. § 173.08 subd. 9(a) and 23 C.F.R. § 750.703(a), and the DOT's previous practices, we conclude the commissioner's deputy improperly excluded public facility zones from even the

possibility of being a business area. The DOT's decision represented its will and not its judgment and is arbitrary and capricious. *See Markwardt,* 254 N.W.2d at 374 (stating agency's decision is arbitrary and capricious where "its determination represents its will and not its judgment").

Based on undisputed factual findings adopted by the commissioner's deputy, we conclude the city's golf course is engaged in business activity. Because the PF zone expressly lists "golf courses" as a permitted use, and the golf course is engaged in business activity, the property is zoned for business activities under Minn.Stat. § 173.02 subd. 9. Accordingly, the commissioner's deputy improperly concluded that this public facility zone did not qualify as a business area.

■ The DOT also argues that even if the golf course is commercial in nature, that the activity is merely "incidental" to its primary use and should not be considered a commercial zone under 23 C.F.R. § 750.708(d) (2000). 23 C.F.R. § 750.708(d) provides:

> A zone in which limited commercial or industrial activities are permitted as an incident to other primary land uses is not considered to be a commercial or industrial zone for outdoor advertising control purposes.

It is difficult to see how the golf course, being the sole activity conducted on the land and an expressly permitted activity within the PF district, could constitute only "incidental use."

■ Finally, the DOT asserts that even if the golf course is found to be a business

---

4. The DOT cited *Port Authority of St. Paul v. Fisher,* 269 Minn. 276, 132 N.W.2d 183, (1964) to support its argument that a city cannot legally promote a private end. But *Port Authority* examined the constitutionality of a public entity leasing land and an office building to a private corporation. There is no similar private interest involved in this case, and unlike *Port Authority,* statutory authority expressly permits cities to operate golf courses. *See* Minn.Stat. § 471.191.

area, the lot acquired from Sysco, on which the most westerly billboard would sit, is zoned PF and not engaged in commercial activity. While the property is not developed or currently used for a commercial purpose, it is located in an area where surrounding property is commercial or industrial. The city ordinance permits billboards in the PF district, and the property is located in a "business area." Thus, the commissioner's assertion is incorrect.

The commissioner's deputy's interpretation that "business area" does not include municipal owned land adds something to the statute that the legislature did not impose. This goes beyond interpretation of the statute and represents its will not its judgment and is thus arbitrary and capricious. *See Minn. Power & Light Co. v. Taxing Dist., City of Fraser*, 289 Minn. 64, 71, 182 N.W.2d 685, 689 (1970) (commissioner has no power to change statute and if meaning is unambiguous, he must give effect to plain language used by legislature). Accordingly, we reverse the commissioner's deputy's decision and order the DOT to issue Eller Media the six permits requested in its May 2000 applications.

## II. Comprehensive Zoning under Federal Rule

### A. Comprehensive Zoning

■■■ Eller Media argues that the commissioner's deputy's finding that the city's action was not taken as part of a comprehensive zoning plan was not supported by the evidence. An appellate court may reverse the agency's decision if it finds the decision was unsupported by substantial evidence. *Spent Fuel Storage*, 501 N.W.2d at 642. The substantial evidence test is a quantitative evidentiary test requiring "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Minn. Power & Light Co. v. Minn. Pub. Util. Comm'n*, 342 N.W.2d 324, 328 (Minn.1983) (quotation omitted).

The commissioner's deputy adopted the ALJ's findings that (1) the city's comprehensive plan was adopted in 1982 and designated the golf course property as industrial, (2) in 1984, the city adopted an ordinance that rezoned most publicly owned properties to PF, and (3) in 1984, parcels of undeveloped land associated with the golf course was rezoned CRP. CRP was an appropriate designation for the undeveloped land in 1984. It undisputed that CRP was an inappropriate designation under the city's zoning code after the golf course was built in 1995 and that the appropriate designation was PF. The record contains no evidence to the contrary. City-council-meeting minutes from April 1999 indicate that the city council even thought the property was zoned PF at that time. The city's community development director testified that zoning was changed from CRP to PF "to bring the golf course land use * * * into consistency with the city zoning code." Because DOT produced no evidence that PF was not the proper designation under the city's zoning ordinance and that CRP was no longer permissible, we conclude the city was operating under a comprehensive zoning plan. We reverse the commissioner's deputy's decision because it is not supported by substantial evidence.

### B. 23 C.R.F. § 750.708

■■■ Eller Media and the city argue that the commissioner's deputy incorrectly concluded that the city's actions were inconsistent with 23 C.F.R. § 750.708 (2000).

■■■ A reviewing court will defer to an agency's interpretation of its own rule under certain circumstances. *Resident v. Noot*, 305 N.W.2d 311, 312 (Minn.1981). But here the commissioner is not interpreting the DOT's regulation; the regula-

tions are federal. "No deference is given to the agency interpretation if the language of the regulation is clear and capable of understanding; therefore, the court may substitute its own judgment." *St. Otto's Home*, 437 N.W.2d at 40 (citation omitted).

▮▮ The commissioner concluded that the city's actions were not part of comprehensive zoning and were created primarily to permit outdoor advertising structures, and thus that 23 C.F.R. § 750.708(b) does not recognize the zoning for outdoor advertising control purposes. 23 C.F.R. § 750.708(b) provides:

> State and local zoning actions must be taken pursuant to the State's zoning enabling statute or constitutional authority and in accordance therewith. Action which is not a part of comprehensive zoning and is created primarily to permit outdoor advertising structures, is not recognized as zoning for outdoor advertising control purposes.

Under the regulation, the zoning will not be recognized for outdoor advertising control purposes if two requirement are met: the action is (1) not a part of comprehensive zoning *and* (2) created primarily to permit outdoor advertising structures. Because the city operated under a comprehensive zoning plan, the commissioner incorrectly concluded that the city's action were inconsistent with 23 C.F.R. § 750.708(b).

Despite the plain language of the regulation, the commissioner asserts that even if the zoning was part of a comprehensive package, it is invalid solely because the action was taken primarily to permit outdoor advertising. In its order, the deputy commissioner asserted that the DOT's position is "[w]hether or nor the action taken is part of a comprehensive zoning, when it is taken primarily to permit outdoor advertising, it will not be recognized." This is

inconsistent with the plain language of the regulation; it eliminates the "and" and thus eliminates the second prong requirement, namely that the action not be a part of comprehensive zoning.

To support this position, the DOT cites *Best Western Tivoli Inn v. Dep't of Trans.*, 448 So.2d 1052, (Fl.App.1984), in which the Florida Court of Appeals upheld the Florida DOT's interpretation of that agency's version of 23 C.F.R. § 750.708. The Florida DOT had interpreted the agency's version of 23 C.F.R. § 750.708 as requiring that an "action which is a part of comprehensive zoning, but which is taken primarily to permit outdoor advertising structures, [would] not be recognized by the Department for outdoor advertising control purposes." *Id.* at 1055. The Florida Court of Appeals reviewed the state agency's administrative rule, not the federal regulation. *Id.* Although *Best Western* upheld the interpretation based on deference to an agency's interpretation of its own rule, it recognized that "this interpretation arguably conflicts with the plain, facial meaning of the rule." *Id.* Because *Best Western* did not interpret the federal regulation, we find it unpersuasive.

Because the regulation is not ambiguous, and the commissioner's interpretation conflicts with the plain language of the regulation, we conclude the commissioner's decision represented its will and not its judgment and is thus arbitrary and capricious. *See Markwardt*, 254 N.W.2d at 374 (stating agency's decision is arbitrary and capricious where "its determination represents its will and not its judgment" (citation omitted)).

### III. Denial of Due Process

▮▮ Eller Media also asserts that the DOT denied it due process by not giving it adequate notice of the reasons for the denial of its permit applications.

 "This court reviews de novo the procedural due process afforded a party." *Zellman ex rel. M.Z. v. Indep. Sch. Dist. No. 2758,* 594 N.W.2d 216, 220 (Minn. App.1999) (citation omitted), *review denied* (Minn. Jul. 28, 1999). Due process requires that deprivation of property be preceded by notice and opportunity to be heard. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). "[I]t is elementary that due process does embrace notice of the claims to be investigated or litigated and an opportunity to present evidence on the issues to be determined." *State v. Duluth, M. & I.R. Ry. Co.* 246 Minn. 383, 400, 75 N.W.2d 398, 410 (1956).

The DOT's initial denial letter did not provide a detailed reason for the denial. And the record shows that the DOT did not specifically refer to 23 C.F.R. § 750.708 (2000) until its January 22, 2001, post-hearing brief. But as the ALJ concluded, and a review of the record supports, the parties addressed the "spot zoning" issue at the hearing, had the opportunity to present testimony and evidence the issue, and did elicit relevant testimony supporting their argument that the rezoning was part of the city's comprehensive zoning plan. In response to questions by the city's attorney, the city community development director testified that the property was not rezoned to allow billboards. Eller Media's attorney elicited similar testimony from the city community development director and specifically questioned him about the city's zoning map.

Although preferably the DOT should have informed Eller Media of the specific grounds for the denial, Eller Media had the opportunity to elicit relevant testimony, and did so elicit relevant testimony, and Eller Media argued the issue in its reply post-hearing brief. We conclude El-ler Media's due process rights to adequate notice were not prejudiced.

**IV. Lack of Deference to the City's Zoning Designation**

 The city argues that the commissioner's deputy failed to give the city's zoning the deference due to legislative determinations under Minn.Stat. § 173.16, subd. 5 (2000). A reviewing court will defer to an agency's interpretation of its own rule under certain circumstances. *Noot,* 305 N.W.2d at 312. But "[n]o deference is given to the agency interpretation if the language of the regulation is clear and capable of understanding; therefore, the court may substitute its own judgment." *St. Otto's Home,* 437 N.W.2d at 40 (citation omitted).

Minn.Stat. § 173.16, subd. 5 provides for local control over zoning matters:

(a) Whenever a bona fide county or local zoning authority has made a legitimate determination of customary usage and in the judgment of the commissioner, reasonably provides for size, lighting and spacing control of advertising devices, such determination shall be accepted in lieu of the provisions of this chapter in the zoned commercial and industrial areas within the geographical jurisdiction of such authority.

(b) All county and local zoning authorities shall give notice to the commissioner of transportation of the establishment or revision of any commercial and industrial zones pursuant to subdivision 1. * * *

(c) The commissioner may not disapprove any zoning ordinance adopted by a county or local zoning authority that has the effect of establishing a business area unless the zoning ordinance would result in the loss to the state of federal highway funds.

Minn. R. 8810.1400 (1999) requires local zoning authorities to obtain an annual "certification of zoning" for local zoning to

apply.[5] The record contains no evidence that the city complied with Minn.Stat. § 173.16, subd. 5(b) by giving the commissioner the required notice or complied with Minn. R. 8810.1400 by requesting or receiving certification.

The commissioner's deputy concluded that Minn.Stat. § 173.16, subd. 5 applies when a bona fide zoning authority requests the commissioner to accept the legitimate local zoning applicable to control of advertising devices. The city argues, however, that subdivision (c) sets forth a strong policy statement and should apply even if certification is required under subdivisions (a) and (b). Minn. R. 8810.1400 unambiguously requires local zoning authorities to obtain an annual "certification of zoning" for local zoning in Minn.Stat. § 173.16, subd. 5 to apply. We find the deputy commissioner's interpretation reasonable, and thus, subdivision (c) does not apply in this case.

## DECISION

First, we reverse the commissioner's decision that Minn.Stat. § 173.08 subd. 1(8) (2000) precluded publicly owned lands from constituting a business area under Minn.Stat. § 173.02, subd. 9(a) (2000). The decision represented the DOT's will and not its judgment and is arbitrary and capricious. The language of Minn.Stat. § 173.08 subd. 9(a) and 23 C.F.R. § 750.703(a) are unambiguous. Minnesota law recognizes that cities engage in proprietary activities, and DOT previously granted permits on other governmentally owned property. We remand with instructions that the DOT issue Eller Media the six requested permits. Second, we reverse the DOT's interpretation that action taken primarily to permit outdoor advertising, even if the action is taken as part of a comprehensive plan, is inconsistent with 23 C.F.R. § 750.708. The regulation unambiguously provides otherwise. Third, Eller Media had adequate notice and was not denied due process. Fourth, the deputy commissioner's decision that Minn.Stat. § 173.16, subd. 5(c) applies when a bona fide zoning authority requests the commissioner to accept the legitimate local zoning applicable to control of advertising devises pursuant to Minn. R. 8810.1400 (1999) is reasonable.

**Reversed in part, affirmed in part, and remanded.**

---

5. Minn. R. 8810.1400 states:
 For the purposes of Minnesota Statutes, section 173.16, subdivision 5, bona fide zoning authorities may request the commissioner of transportation to accept the legitimate local zoning applicable to control of advertising devices within legally zoned commercial or industrial areas. * * *
 * * * All requests for certification shall include a copy of the minutes or procedure authorizing the zoning authority to request such certification from the commissioner of transportation.
 All certification shall be on an annual basis and shall be based upon local enforcement. Failure to enforce may result in revocation of certification.